374 So.2d 849 (1978)
Charles E. HALE, Plaintiff-Appellant,
v.
FORD MOTOR CREDIT COMPANY et al., Defendants-Appellees.
No. 76-2287.
Supreme Court of Alabama.
September 29, 1978.
Before COLEMAN and FAY, Circuit Judges and KING[*], District Judge.
PER CURIAM:
We have concluded that this appeal presents an important issue of Alabama law which we believe is appropriate for resolution *850 by the Supreme Court of Alabama. Our decision in this matter will therefore be deferred pending certification of the issue to the Supreme Court of Alabama.
We have requested that the parties submit a proposed agreed statement of facts and certificate of issues for decision pursuant to our general practice. See West v. Caterpiller Tractor Co., Inc., 504 F.2d 967 (5th Cir. 1974). The parties have reached agreement on the statement of the case and the issue to be certified.
CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.
TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:
It appears to the United States Court of Appeals for the Fifth Circuit that the above styled case in this court involves a question or proposition of the law of the State of Alabama which is determinative of the cause, and there appears to be no clear, controlling precedent in the decisions of the Supreme Court of the State of Alabama. This Court certifies the following question of law to the Supreme Court of Alabama for instructions concerning said question of law, based on the facts recited herein, such case being on appeal from the United States District Court for the Southern District of Alabama.

I. STYLE OF THE CASE

The style of the case in which this certification is made is Charles E. Hale, Plaintiff-Appellant, versus Ford Motor Credit Company, a corporation, et al., Defendants-Appellees, Case No. 76-2287, United States Court of Appeals for the Fifth Circuit on appeal from the United States District Court for the Southern District of Alabama.

II. STATEMENT OF THE FACTS

On March 30, 1974, Charles Hale purchased the automobile in question from Robinson Brothers Lincoln Mercury, Inc. and executed therefor a retail installment contract in the gross amount of TWELVE THOUSAND SIX HUNDRED SIXTY AND 69/100 ($12,660.69) DOLLARS which sum included a FIVE HUNDRED AND NO/100 ($500.00) DOLLARS pickup payment, payable April 28, 1974 on which no finance charge was assessed. The total of the regularly scheduled monthly installments under the terms of the contract is TWELVE THOUSAND ONE HUNDRED SIXTY AND 69/100 ($12,160.69) DOLLARS payable in forty-one (41) monthly installments of TWO HUNDRED EIGHTY-NINE AND 55/100 ($289.55) DOLLARS and one (1) final installment of TWO HUNDRED EIGHTY-NINE AND 14/100 ($289.14) DOLLARS, on the fourteenth (14th) day of each month, commencing May 14, 1974. Under the terms of the contract, the seller was granted a security interest in the automobile to secure payment of all amounts due or to become due thereunder. The contract provides that "Waiver ... of any default shall not be deemed a waiver of any other default" and "This contract constitutes the entire agreement between the parties and no modification hereof shall be valid in any event, and Buyer expressly waives the right to rely thereon, unless made in writing signed by the seller." The contract provided for a delinquent charge on each installment which was in default for more than ten (10) days in the amount of 5% thereof. Contemporaneously with its execution, the contract was assigned by Robinson Brothers Lincoln Mercury, Inc., to Ford Motor Credit Company, defendant.
Ford Motor Credit Company informed Hale by letter dated February 18, 1975 which letter Hale admits receiving, that his physical damage insurance policy on the automobile in question would expire on March 30, 1975 and that Ford Motor Credit Company, in accordance with the terms of the contract, would renew such insurance unless it received evidence of other insurance at least twenty (20) days before the expiration date. This letter further provided that should Ford Motor Credit Company renew the expiring policy, Ford Motor Credit Company would pay the renewal *851 premium and add such premium plus a service charge to Hale's account with Ford Motor Credit Company. Hale did not acquire other insurance on the automobile in question. Ford Motor Credit Company sent Hale a letter dated March 21, 1975 stating that Ford Motor Credit Company had renewed the expiring physical damage insurance policy and had added to Hale's remaining payments, the renewal premium of FOUR HUNDRED SEVENTY-NINE AND NO/100 ($479.00) DOLLARS, plus an 8% A.P.R. related finance charge and had increased Hale's monthly installment payments to THREE HUNDRED SEVEN AND 21/100 ($307.21) DOLLARS commencing May 14, 1975. Hale does not recall receiving this letter, but does remember being advised by Ford Motor Credit Company in a telephone conversation that the monthly payments would be increased to THREE HUNDRED SEVEN AND 21/100 ($307.21) DOLLARS beginning May 14, 1975.
The following is a summary of the payments made by Mr. Hale as more particularly appears on Defendant's Exhibit No. 4, viz:

 DATE
PAYMENT DUE POSTED
NUMBER DATE BY FORD AMOUNT
Pickup 4-28-74 5-31-74 $ 789.14
 1. 5-14-74 5-31-74 Included above
 2. 6-14-74 7-23-74 289.55
 3. 7-14-74 8-21-74 289.55
 4. 8-14-74 9-16-74 289.96
 5. 9-14-74 10-14-74 300.00
 6. 10-14-74 11-11-74 200.00
 7. 11-14-74 12- 3-74 368.65
 8. 12-14-74 12-26-74 286.46
 9. 1-14-75 2- 4-75 286.46
10. 2-14-75 3- 5-75 286.46
11. 3-14-75 4- 1-75 286.46
12. 4-14-75 4- 7-75 3.00
 4- 9-75 12.00
 5-12-75 286.61
13. 5-14-75 6- 3-75 280.00
14. 6-14-75 6-30-75 289.55
 ___________
 TOTAL $4,553.15 (sic)

Although delinquent in each and every monthly installment for which (except for the June 14, 1975 installment) he was assessed a late charge, Hale made all regularly scheduled monthly installments due, under the contract through April 14, 1975. Instead of Hale paying to Ford Motor Credit Company the increased monthly installment of THREE HUNDRED SEVEN AND 21/100 ($307.21) DOLLARS for May 14, 1975, Ford Motor Credit Company received TWO HUNDRED EIGHTY-NINE AND NO/100 ($289.00) DOLLARS on June 3, 1975, leaving a shortage owing on the May 14, 1975 installment of EIGHTEEN AND 21/100 ($18.21) DOLLARS.
On June 4, 1975 Ford Motor Credit Company sent Hale a collection letter demanding the amount past due on the account plus accrued late charges of ONE HUNDRED NINE AND 16/100 ($109.16) DOLLARS to which Ford Motor Credit Company received no response. On June 5, 1975, Ford Motor Credit Company phoned Hale's place of employment and requested Hale be asked to return the call to which Ford Motor Credit Company received no response. Between June 5, 1975 and June 13, 1975 Ford Motor Credit Company sent Hale a letter demanding the amount past due on the account plus accrued late charges of ONE HUNDRED NINE AND 16/100 ($109.16) DOLLARS and advising him that failure to pay the sum demanded could result in repossession of the automobile in question, to which Ford Motor Credit Company received no response. On June 13, 1975, Ford Motor Credit Company sent Hale a letter advising him that legal action would be taken unless he paid this account up to date, to which Ford Motor Credit Company received no response. (Copies of Defendant's Exhibits Nos. 21 and 22 are annexed hereto for the Court's consideration.)
Hale admits receiving a letter from Ford Motor Credit Company on or about June 17, 1975 which advised him that the June 14, 1975 payment was in default but he took no action and made no contact with Ford Motor Credit Company prior to Ford Motor Credit Company's repossessing the automobile in question. The vehicle in question was repossessed by Ford Motor Credit Company on June 20, 1975.
As of the date of repossession, Hale was in default in payment of the EIGHTEEN AND 21/100 ($18.21) DOLLARS, shortage owing on May 14, 1975 installment and *852 THREE HUNDRED SEVEN AND 21/100 ($307.21) DOLLARS for the June 14, 1975 monthly installment, which sums were due Ford Motor Credit Company under the terms of the contract as modified by the spreading of renewal insurance premium together with the appertaining finance charge over the regularly scheduled monthly installments commencing May 14, 1975. Further, Hale owed Ford Motor Credit Company a balance of ONE HUNDRED NINE AND 16/100 ($109.16) DOLLARS on late charge assessments on delinquent payments. The gross balance owing by Hale to Ford Motor Credit Company (under the terms of the contract with the addition of FIVE HUNDRED THIRTY AND 09/100 ($530.09) DOLLARS for the insurance renewal and appertaining finance charge) as of the date of repossession is EIGHT THOUSAND NINE HUNDRED TWENTY-SEVEN AND 18/100 ($8,927.18) DOLLARS which sum does not include accrued late charges of ONE HUNDRED NINE AND 16/100 ($109.16) DOLLARS.
The plaintiff sued the defendants for conversion and wrongful possession claiming both compensatory and punitive damages. The United States District Court for the Southern District of Alabama granted the defendants amended motion for summary judgment and entered judgment on behalf of the defendants. An appeal was taken to the United States Court of Appeals for the Fifth Circuit.

III. QUESTION FOR THE SUPREME COURT OF ALABAMA

Where a security agreement containing non-waiver acceleration, and non-modification clauses is in default in payment, is the secured party required to give notice to the buyer prior to repossession when past due payments have been repeatedly accepted; and if so, is the method and contents of the pre-repossession notices in the case sub judice sufficient as a matter of law?
The entire record in this case, together with copies of the briefs of the parties and agreed certification in this Court, are transmitted herewith.
 APPENDIX
 Exhibit No. 21.
Ford Motor Credit Company P.O. Box 9007
 Mobile, Alabama 36609
Dear Customer:
I have made several attempts to contact you by letter and by telephone regarding
payments on your car.
The records in your account file show that every opportunity has been given to you to
bring your account current or to contact us to make other arrangements.
We do not want your car, we want to help you pay for it. Once again, I request
that you send us your check for the past due payments, and contact me as soon as
possible.
 Sincerely,
 Customer Account Representative
Account Number:
My Telephone Number: 344-3820
 REMIT LATE CHARGES DUE
 $___________
*853
 Exhibit No. 22.
Ford Motor Credit Company P.O. Box 9007
 Mobile, Alabama 36609
 RE:
Dear Customer:
We have written you on two occasions in the past regarding your seriously
delinquent account.
It is imperative now that you forward $ in the enclosed envelope or call this
office at 344-3820. Failure to comply could result in the repossession of your
automobile in accordance with the terms of your contract.
Your prompt attention to the above will be expected.
 Yours very truly,
REMIT LATE CHARGES DUE
 $___________
 Collection Supervisor
We answer the first question in the negative. A security agreement is effective according to its terms. Code of 1975, § 7-9-201; Waters v. Union Bank of Repton, Ala., 370 So.2d 957 (1979); 13 ABR 1468. The inadvertence of the debtor here cannot raise an estoppel against the contractual interest of the creditor under the express terms of the security agreement. Cf. Draughon v. General Finance Credit Corp., Ala., 362 So.2d 880 (1978). There having been no modification of the express agreement, the secured party, upon default, had the right to take possession of the collateral. Code of 1975, § 7-9-503; Ford Motor Credit Co. v. Ditton, 52 Ala.App. 555, 295 So.2d 408 (1974). Notice of the statutory right to take possession is not required. Section 7-9-503, supra; Speigle v. Chrysler Credit Corp., 56 Ala.App. 469, 323 So.2d 360, cert. den. 295 Ala. 420, 323 So.2d 367 (1976).
Having answered the first question in the negative it is unnecessary to address the second question.
CERTIFIED QUESTION ANSWERED.
TORBERT, C. J., and BLOODWORTH, MADDOX, ALMON and SHORES, JJ., concur.
FAULKNER, JONES and EMBRY, JJ., dissent.
EMBRY, Justice (dissenting):
I am of the opinion the decision of the Court of Civil Appeals in Bank of Huntsville v. Witcher, 336 So.2d 1384 (Ala.Civ. App.1976), was correct in holding that past conduct by a financial institution in accepting late payments estopped it from repossessing a vehicle unless it gave prior notice and demanded payment. Thus, in the present case, the conduct of Ford Motor Credit Company in accepting late payments created a situation whereby Hale was justified in expecting Ford Motor Credit Company to continue to accept late payments. The facts of this case are different from Draughon v. General Finance Credit Corporation, 362 So.2d 880 (Ala.1978). In Draughon, the debtor was barred from asserting estoppel as a defense because he took action *854 to avoid being contacted by his creditor, i. e., he changed his residence without notifying the creditor and concealed his phone number so as to avoid calls from the creditor.
In this case, Hale took no action which would bar him from asserting estoppel as a defense.
Having decided that notice, in the circumstances of this case, is required before a vehicle may be repossessed, I would next determine whether the pre-repossession notices in this case were sufficient. The facts indicate the first pre-repossession notice of 4 June 1975 demanded the amount past due on the account plus accrued late charges. On 5 June 1975, FMCC called Hale's place of employment and requested that he call them. Between 5 June 1975 and 13 June 1975, a letter was sent to Hale which stated, "Failure to comply could result in the repossession of your automobile in accordance with the terms of your contract" (emphasis added). On 13 June 1975, another letter was sent advising that "legal action" would be taken unless he paid his account up to date. Hale admits receiving a letter from FMCC on or about 17 June 1975 which advised him that the 14 June 1975 payment was in default but he took no action and made no contact with FMCC prior to its repossessing the automobile on 20 June 1975.
The contents of these letters and that of the phone call were not sufficient to notify Hale that his car would be repossessed. The word "could" as used in one of the notices did not suggest immediate action on the part of Ford Motor Credit Company. Nor did the phrase "legal action" necessarily imply the car would be repossessed. Never was it stated the FMCC would in fact repossess the car if payments were not made by a certain date.
I would answer the question posed which precedes the semicolon in the affirmative; that following the semicolon in the negative.
FAULKNER and JONES, JJ., concur.
NOTES
[*] District Judge of the Southern District of Florida, sitting by designation.