The plaintiff, Blanchard L. Draughon, appeals from a judgment in his favor in the sum of one hundred and twenty dollars. He assigns as error the trial court's granting of the defendant's motion for directed verdict with respect to counts three, four and five, and a portion of counts one and two of the plaintiff's complaint. We affirm in part and reverse in part.
On June 9, 1973, the plaintiff purchased a 1973 Ford pickup truck from Treadwell Ford, Inc., in Mobile, Alabama, and executed a security agreement in the amount of $3,573.50. Contemporaneous with its execution, the contract was assigned to defendant-appellee, G.F.C. Credit Corporation (hereinafter referred to as G.F.C.). The sum of $500.00 was payable on July 5, 1973, and thirty monthly payments of $102.45 were due on the fifteenth day of each month.
Under the terms of the contract, plaintiff agreed to keep the truck in his possession at the address listed on the contract and to pay a delinquency charge of five percent on each installment in default for more than ten days. The contract granted the seller a security interest in the truck and upon default, the seller had the right to take immediate possession.
The contract further provided that the buyer, upon repossession, would waive any claim or demand against the seller for trespass or damage resulting therefrom. The contract contained a nonmodification clause stating, in effect, that no statement or representation would be binding unless expressly contained in the contract. The contract also contained a clause stating, that a waiver by the seller of any default would not be deemed a waiver of any subsequent default.
The plaintiff was disabled and his primary source of income was his disability check which he received on or about the third of each month from the Social Security Administration. The plaintiff testified that prior to July 5, 1973, the date on which the $500.00 down payment was due, he called defendant G.F.C. and told them he could not pay the $500.00 on time. According to the plaintiff, the person he talked to at G.F.C. said they would "set it up a few days." The $500.00 payment was eventually paid on July 16, 1973.
The plaintiff further testified that upon receipt of the payment book from G.F.C., he contacted G.F.C. by phone. He advised them that he could not make the payments in accordance with the contract since his major source of income did not arrive until the third of each month following the due dates set out in the payment schedule. The plaintiff stated that he asked G.F.C. to change the due dates, but the person at G.F.C. stated that it was not necessary to change the contract or payment schedule, but that the plaintiff would be responsible for late charges.
The July 15, 1973 payment was paid on July 30, 1973, and for the following twelve months, each payment was late. Some payments were paid more than a month after the due date. G.F.C., however, accepted each of these thirteen payments even though they were not made in accordance with the contract.
Employees of G.F.C. testified that beginning in late July, 1973 until August, 1974, numerous attempts were made to collect payments from the plaintiff. These persons testified that numerous letters were sent to the plaintiff notifying him that his payment was due. In answers to interrogatories, the plaintiff stated that he received these past due notices, but at trial he did *Page 882 
not recall receiving them. Representatives from G.F.C. went to the plaintiff's residence on numerous occasions to collect these past due payments.
In January or February, 1974, the plaintiff moved approximately one or two miles from the address specified on the contract without notifying G.F.C. The plaintiff testified that he sold his house and moved into a house owned by some friends, and that he did not want to change his mailing address until he became permanently settled. At least one letter was sent to the plaintiff at the address listed on the contract and was returned to G.F.C. marked "unclaimed," and another certified letter from G.F.C. addressed to the plaintiff was not received by the plaintiff, notwithstanding the fact that the plaintiff's son signed for it. The employees of G.F.C. eventually located the plaintiff at his new residence. Two employees of G.F.C. testified that the plaintiff's wife told a representative of G.F.C. that she and her husband did not tell G.F.C. their phone number because they did not want to be harassed by creditor calls. G.F.C. learned of the phone number only after the truck was repossessed.
On May 15, 1974, a representative from G.F.C. went to the plaintiff's residence, collected the April 15, 1974, payment, and advised the plaintiff's wife that G.F.C. would no longer carry the account past due and that the plaintiff would have to keep his account up to date or pay off his account. Nevertheless, the June 15, 1974, payment was accepted by G.F.C. on July 15, 1974. On August 8, 1974, G.F.C. sent the plaintiff a letter demanding payment of the July 15, 1974, payment by August 12, 1974. This payment was made on August 12, 1974. On August 21, 1974, G.F.C. sent a letter to the plaintiff. The letter was not introduced into evidence, but according to G.F.C.'s ledger card, it appears that the letter asked the plaintiff to call the office of G.F.C. to negotiate an extension on the August 15, 1974 payment. The plaintiff did not respond.
On August 30, 1974, G.F.C. authorized defendant Gulf Coast Adjusters and Recovery Bureau (hereinafter referred to as Gulf Coast) to repossess the plaintiff's truck. G.F.C. agreed to hold Gulf Coast harmless as long as the repossession was peaceful and in accordance with law. The repossession was peaceful. On September 2, 1974, defendant Gulf Coast took possession of the truck and certain personal property therein from the premises of Ira Clark. The residence of Ira Clark was approximately twenty to twenty-five miles from the plaintiff's home. Clark was a life long friend of the plaintiff and had, prior to repossession, borrowed the pickup truck from the plaintiff in exchange for loaning the plaintiff one of his vehicles.
The plaintiff went to the offices of defendant G.F.C. the day after repossession and offered the office manager the August 15, 1974, payment, and two additional payments to put the plaintiff ahead of schedule. Initially, G.F.C. accepted the plaintiff's offer, but subsequently they requested an additional $150.00 as a repossession fee, which the plaintiff refused to pay. In late September or early October, 1974, the plaintiff went to the offices of Ford Motor Credit Company to discuss the status of his truck. On October 8, 1974, the Consumer Loan Manager of Ford Motor Credit Company called G.F.C. to inquire into the status of the plaintiff's account with G.F.C. He told G.F.C. that he was considering helping the plaintiff redeem his truck. He asked for the payoff on the account and what it would take to redeem the truck. G.F.C. gave him a figure of $1,654.15. On October 9, 1974, the plaintiff presented a check for $1,654.15 to G.F.C., but this check was refused when the plaintiff refused to sign a form releasing G.F.C. from their obligation of selling the vehicle at either a public or private sale. G.F.C. would not allow the plaintiff to take this form to his attorney before he would consider signing it.
In a letter to the plaintiff dated November 1, 1974, G.F.C. told the plaintiff that he could redeem the truck by paying the net balance due under the contract along with the repossession fee of $146.00, or he could redeem by paying the contract balance and *Page 883 
executing a form waiving the necessity of G.F.C.'s holding a private sale. The plaintiff never complied with either of these alternatives. G.F.C. contends the balance due owing by the plaintiff was the sum of $1,826.10, which the plaintiff never tendered.
The plaintiff filed suit against G.F.C. The complaint was amended to add Gulf Coast as a defendant. Counts one and two of the plaintiff's complaint alleged a wrongful taking and conversion of the pickup truck and other personal property. Count three alleged a trespass and counts four and five alleged a conversion of the truck and the personal property therein, predicated upon G.F.C.'s refusal to allow the plaintiff to redeem the pickup truck.
Ira W. Clark filed a complaint against G.F.C. and Gulf Coast alleging trespass to land, conversion of personal property and wrongful taking of his personal property allegedly in the truck at the time of repossession. The two actions were consolidated. Gulf Coast filed a third-party complaint against G.F.C. in the consolidated actions, and G.F.C. subsequently filed a cross-claim against Gulf Coast asserting that repossession was not accompanied in a peaceful manner and that Gulf Coast exceeded the authority granted to it by G.F.C.
At the close of the plaintiff's evidence, his motion to amend count four of the complaint was denied and the trial judge granted G.F.C.'s motion for directed verdict to counts four and five of complaint and denied the motion as to counts one, two and three and to all counts of the Clark action. Defendant Gulf Coast's motion for directed verdict was denied.
At the close of all the evidence, G.F.C.'s motions for directed verdict were granted as to all counts in the Clark action; granted as to counts three, four and five of the plaintiff-Draughon action; and granted in part as to the pickup truck in counts one and two. The motion for directed verdict was denied as to the other personal property alleged to have been in the truck specified in counts one and two. The trial judge granted Gulf Coast's motion for directed verdict as to counts one and two as to the vehicle, granted it as to count three, but denied it on all counts in the Clark action.
Thus, the only counts submitted to the jury as far as G.F.C. was concerned were counts one and two relating to the personal property alleged to have been in the truck when it was repossessed. The only counts submitted to the jury as far as Gulf Coast was concerned were counts one and two in theDraughon case relating to the personal property other than the truck and all counts of trespass and conversion in the Clark
case.
The jury returned a one hundred and twenty dollar verdict in favor of the plaintiff and against G.F.C. and found for Gulf Coast in the Clark case. The plaintiff then filed this appeal.
The plaintiff's first contention is that the court erred in granting the defendant's motion for directed verdict to the plaintiff's counts for conversion, wrongful repossession and trespass. The plaintiff claims that a jury question was presented as to whether G.F.C. was estopped from asserting its default rights under the contract without first advising the plaintiff that it would demand strict performance of the contract in the future. See Bank of Huntsville v. Witcher,336 So.2d 1384 (Ala.Civ.App. 1976).
Rule 50 (e) of the Alabama Rules of Civil Procedure provides that motions for directed verdicts and judgment notwithstanding the verdict shall be decided in accordance with the scintilla evidence rule. This court has stated on numerous occasions that in civil cases, a question of fact must go to the jury, if the evidence, or any reasonable inference therefrom, furnishes a mere gleam, glimmer, spark, or a scintilla in support of the theory of the complaint. Western Ry. of Alabama v. Still,352 So.2d 1092 (Ala. 1977); Kilcrease v. Harris, 288 Ala. 245,259 So.2d 797 (1972) and cases cited therein. Furthermore, where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the party opposing the motion. It is only where the facts are such that reasonable men must draw the same conclusion from *Page 884 
them that the question is considered as one of law for the court. When a reasonable inference may be drawn, which is adverse to the party requesting the motion, the motion should be refused. Alford v. City of Gadsden, 349 So.2d 1132 (Ala. 1977).
The plaintiff contends that there was evidence presented showing that the defendant had acquiesced in the plaintiff's practice of making loan payments late, and that there was a question of fact for the jury, as to whether there was an equitable estoppel. Alabama has recognized that where evidence of estoppel is susceptible of different reasonable inferences, the jury must determine whether the facts of the particular case constitute an estoppel. Imperial Group, Ltd. v. LamarCorp., 347 So.2d 988 (Ala. 1977); Humphrey v. Boschung,287 Ala. 600, 253 So.2d 769 (1971).
The purpose of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. Mazer v. Jackson Ins. Agency,340 So.2d 770 (Ala. 1976); First National Bank of Opp v. Boles,231 Ala. 473, 165 So. 586 (1936). Because the doctrine of estoppel is for the protection of innocent persons, it is essential that the party claiming the benefit of estoppel does not predicate his claim on his own dereliction of duty or wrongful conduct.
Where a party seeks an equitable remedy, such as equitable estoppel, the party's conduct must reflect the maxim of "clean hands," for any unconscientious conduct arising out of the subject matter of the suit will bar their action. Anders v.Sandlin, 191 Ala. 158, 67 So. 684 (1914).
In this case, the plaintiff not only changed his residence without notifying the defendant, but he also concealed his phone number so as to avoid "creditors" calls. We think that this conduct bars the plaintiff's assertion of estoppel as to counts one, two and three. In the absence of such an estoppel, there is not a scintilla of evidence to support the theory of the complaint, for the repossession in this case is expressly sanctioned in § 7-9-503, Code 1975. The trial court did not err in granting defendant's motion for a directed verdict as to the first three counts, concerning conversion, wrongful repossession, and trespass.
The next contention of error is the action of the trial court in directing a verdict for G.F.C. on the redemption count of the complaint. G.F.C. communicated to the plaintiff that he could redeem for $1,654.15. The plaintiff tendered this amount but G.F.C. would not accept the check unless the plaintiff signed a waiver form.
The plaintiff claims that a jury question was presented as to whether G.F.C. waived its rights to charge certain expenses under the Alabama Code, § 7-9-506 (1975). G.F.C. contends that any offer of redemption for less than the sum of charges allowed in § 7-9-506 must be stated in writing by the creditor.
In Rainey v. Ford Motor Credit Co., 294 Ala. 139,313 So.2d 179 (1975), this court affirmed the trial court's granting of summary judgment in favor of the assignee of a conditional sales contract in an action by the buyer for conversion. InRainey, subsequent to repossession, the buyer received a notice advising him that the repossessed vehicle would be sold unless redeemed. The buyer called the secured creditor asking for a computation of the balance owed and the creditor agreed to send this computation to the buyer, but never did. Eventually, the truck was sold. This court held that the failure of the defendant to furnish the computation of a payoff balance upon anon-written request did not excuse tender. Rainey, supra, at 143, 313 So.2d at 183. The court based its holding on 7-9-208, Code (1975), which provides in part:
 "Request for statement of account or list of collateral — (1) A debtor may sign a statement indicating what he believes to be the aggregate amount of unpaid indebtedness as of a specified date and may send it to the secured party with a request that the statement be approved or corrected and returned to the debtor . . ." *Page 885 
Rainey simply held that a secured creditor was not obligated under § 7-9-208 of the Alabama Code to give a statement of the balance due where the debtor made an oral rather than a written request for a statement of his account. That case did not hold that before a debtor can redeem he must make a written request for the balance due. We do not agree with the defendant's contention that § 7-9-208 requires such a request for there to be an effective tender under all circumstances.
Section 7-9-506, Code 1975, reads as follows:
 "Debtor's right to redeem collateral. — At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 7-9-504 or before the obligation has been discharged under section 7-9-505 (2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses." (Emphasis added.)
Section 7-9-501 (3)(d) of the Alabama Code provides that the debtor's right to redeem may not be varied or waived prior to default. See Comment 4, § 7-9-501, Code 1975; IndianapolisMorris Plan Corp. v. Karlen, 28 N.Y.2d 30, 319 N.Y.S.2d 831,268 N.E.2d 632 (1971); 69 Am.Jur.2d, Secured Transactions, § 645 (1973). The "unless otherwise agreed in writing after default" language in § 7-9-506, however, does permit the debtor after default, to waive or vary his right to redeem by agreement in writing. Id. Nowhere have we found any authority that this language in § 7-9-506 means that an agreement to pay an amount less than the sum of the items set out in § 7-9-506 must be in writing to constitute a valid redemption.
In the instant case, the plaintiff tendered a check for $1,654.15 after G.F.C. informed Ford Motor Credit Co. that this was the amount it would take to redeem the truck. This check was refused when the plaintiff refused to sign a form releasing G.F.C. from their obligation to sell the truck. This form was not introduced into evidence. G.F.C. later contended that the amount tendered was less than the sum of the obligations secured by the collateral and the repossession fee, and thus there was not a sufficient tender under § 7-9-506.
With respect to the plaintiff's refusal to sign the form presented to him by G.F.C., we find no provision in the Uniform Commercial Code that requires a debtor to sign a form upon tender, releasing the secured party from the necessity of holding a private or public sale. Indeed we are at a loss to even speculate why G.F.C. desired a waiver of sale. When redemption is effected a sale is not called for. This waiver form is not part of the record and we decline comment upon what it might have included. We think that when the creditor advises the debtor, or a third party, of the amount necessary to redeem the collateral, this amount should be sufficient for redemption. The debtor does not have a responsibility to tender the entire amount where the creditor does not include certain items allowed under § 7-9-506 when he renders an account stated, nor does the creditor have a responsibility to sign a purported waiver form.
Under § 7-9-506, the debtor in order to redeem, has to tender "fulfillment of all obligations . . . as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale . . ." The secured party is obviously in a superior position to determine the amount of "all obligations" and "expenses reasonably incurred"; therefore, where the secured party declares the amount due, the debtor, or a party acting on his behalf is entitled to rely on that declaration. The defendant relies on Rainey v. Ford Motor Credit Co., 294 Ala. 139, *Page 886 313 So.2d 179 (1975) to support their contention that the plaintiff made an insufficient tender; however, in Rainey, the debtor failed to make any tender after receiving the notice of sale. In this case, the debtor tendered the amount declared by the secured party to be necessary for redemption, thus theRainey principle is clearly inapplicable.
In this case, the debtor provided the defendant with all sums requested under § 7-9-506, but this sum was refused and possession of the vehicle was not given to the plaintiff. We hold that a jury question was presented as to whether the defendant G.F.C. waived its rights to collect certain expenses allowed under § 7-9-506. The trial court, therefore, erred in granting the defendant's motion for directed verdict as to counts four and five of the complaint, which alleged a conversion predicated upon G.F.C.'s refusal to allow the plaintiff to redeem.
The plaintiff's third contention is that the trial court erred in refusing to allow the plaintiff to amend count four of his complaint at the end of his evidence. This attempt to amend came immediately after the trial court directed a verdict in favor of G.F.C. relating to G.F.C.'s refusal to allow redemption. The trial court, in directing the verdict as to counts four and five stated that there was an improper attempt to redeem, and therefore, there could be no conversion count relating thereto. As stated above, a jury question was presented as to whether there was a proper attempt to redeem. This amendment should be allowed upon re-trial.
The plaintiff's final contention is that the trial court erred in overruling the plaintiff's objection to a letter offered into evidence that was written subsequent to the filing of the lawsuit and contained hearsay and self serving declarations. The letter was sent to the plaintiff from the defendant G.F.C. and sets forth the defendant's position as to the transactions with respect to the redemption of the truck. The letter also contains statements made to the defendant by its attorney. The defendant contends that the portions of the letter that contained hearsay material and self-serving declarations were not objected to specifically. We have reviewed the letter and are of the opinion that portions of it are inadmissible. We are confident that upon re-trial the court will admit only the admissible portions.
The judgment is therefore affirmed in part, reversed in part and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.