Appellant Auto-Plaza, Inc., is an Alabama corporation located in Etowah County, Alabama, and formerly engaged in the business of selling new and used cars.
In August of 1976, Auto-Plaza assumed a mortgage and mortgage note due Appellee Central Bank from a corporation known as Alder Acres, Inc. This property had previously been leased by Auto-Plaza as a service department and body shop. The "Alder Acres" mortgage note provided for payments to be made on the first day of each month from its assumption in August of 1976. Until April of 1980, Auto-Plaza wrote approximately 42 checks for payments on this mortgage and note, none of which were made on the first day of the month as required by the mortgage note.
On August 16, 1978, Auto-Plaza mortgaged to Central Bank additional property on which the main buildings used by Auto-Plaza in its dealership were located. This mortgage indebtedness, evidenced by a note, was in the amount of $250,000. While this mortgage note provided for payments to be made by the 16th of each month, only 5 of the 20 payments made prior to this dispute were made on the 16th. No late charges were assessed by Central on any of the payments made subsequent to the 16th of each month, because no installment payment was made "more than 15 days in arrears."[1]
Auto-Plaza did not make either the May 1, 1980, payment on the Alder Acres note or *Page 8 
the May 16, 1980, payment on the $250,000 note. On May 19, 1980, Central exercised its option to accelerate the indebtedness under both mortgages and commenced foreclosure proceedings. A check was written by Auto-Plaza for these two payments on May 20, 1980, and mailed to Central Bank. When the payment was received a day or so later, Central refused it because foreclosure had already begun.
On May 23, 1980, Auto-Plaza filed a complaint for a temporary injunction, permanent injunction, damages, costs and fees. The complaint alleged that the mortgages were not in default despite the fact that the monthly mortgage payments had not been made on the date shown on the face of the mortgages and mortgage notes.
Following the trial of the case, the circuit court entered an order denying the injunction and authorizing foreclosure to take place on June 13, 1980. On that same date, but prior to the foreclosure sale, this Court granted Auto-Plaza's petition for a stay of the foreclosure, pending this appeal. We affirm and dissolve the stay order.
 I. The Mortgagor's 15-Day "Grace Period."
Auto-Plaza asserts that foreclosure of the $250,000 mortgage by Central Bank was unwarranted because it was entitled to a 15-day grace period after the 16th of each month within which to make its monthly payment. We disagree.
Auto-Plaza bases its "grace period" contention on the following language contained in the $250,000 mortgage.
 "It is understood and agreed that a late charge of five cents ($.05) per dollar will be paid by the maker(s) on each installment more than 15 days in arrears."
We fail to see how this provision affords the mortgagor a grace period. We interpret its terms as unambiguous; and we hold that this provision merely subjects Auto-Plaza to a late charge for any installment paid more than 15 days after the due date (i.e., the 16th of each month).
In Kinmon v. J.P. King Auction Company, Inc., 290 Ala. 323,276 So.2d 569, at 570 (1973), this Court stated:
 "[I]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation."
Central Bank, while denying the existence of any grace period, submits the following provision, contained in the $250,000 mortgage, as affording propriety to its foreclosure of that mortgage:
 "Upon failure to pay any installment of principal and/or interest when due or if any of the conditions and requirements in said mortgage be not complied with, the entire principal sum at the option of the holder, shall become due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default." (Emphasis added.)
Central contends, and we agree, that the provision cited from the $250,000 mortgage gives it the right to foreclose that mortgage if any installment due on the note secured by the mortgage is not paid when it becomes due. Consequently, the mortgagee's action in foreclosing this mortgage was justified and was not subordinate to any 15-day grace period.
 II. Equitable Estoppel
Auto-Plaza insists that the doctrine of equitable estoppel inpais forbids foreclosure of either the Alder Acres mortgage or the $250,000 mortgage. In essence, Auto-Plaza contends that the mortgagee's systematic acceptance of late payments, as a matter of law, estops its right to foreclose without notice.
Central, citing Hale v. Ford Motor Credit Company,374 So.2d 849 (Ala. 1979), counters with the proposition that a mortgagor, by his own default, cannot raise an estoppel and destroy the option of a mortgagee to exercise his rights to accelerate maturity of the debt, and to foreclose the mortgage pursuant to acceleration and nonwaiver of acceleration provisions contained in the mortgage.
Hale, supra, at p. 852, presented the question: *Page 9 
 "Where a security agreement containing non-waiver acceleration, and nonmodification clauses is in default in payment, is the secured party required to give notice to the buyer prior to repossession when past due payments have been repeatedly accepted . . .?"
The facts in Hale were that the purchaser of an automobile financed his purchase through Ford Motor Credit Corporation. While each installment payment made by the buyer was after the date specified in the note as the due date, as of the date of repossession, the buyer was in default in one partial monthly payment and one full monthly payment. Prior to repossession, Ford Motor Credit had made letter demands of Hale as to the defaulted partial monthly payment on three separate occasions and as to the defaulted full monthly payment on one occasion. The Court held, under these circumstances, that "[t]he inadvertence of the debtor here cannot raise an estoppel against the contractual interest of the creditor under the express terms of the security agreement. Cf. Draughon v.General Finance Credit Corp., Ala., 362 So.2d 880 (1978)."
Auto-Plaza attempts to distinguish Hale on two grounds: (1) The purchaser in Hale never tendered to the creditor the amount due. In contrast, says Auto-Plaza, its May, 1980, payment on the $250,000 mortgage was made within the 15-day "grace period," and the amount due Central Bank for the May payment on both mortgages was tendered by Appellant and rejected by the bank. (2) Auto-Plaza alleges an agreement with Central Bank to hold in abeyance all legal action pending a May 27, 1980, meeting between them to resolve their financial problems. Central says that this was an issue of fact which was resolved by the trial court adversely to Auto-Plaza.
We reject the respective contentions of the instant parties with respect to the application vel non of the equitable estoppel doctrine as a matter of law. On the one hand, the inclusion in the security instrument of a nonwaiver of the acceleration clause does not, of itself and under all circumstances, preclude, as a matter of law, the operative effect of the equitable principles inherent in the doctrine of estoppel. By virtue of its very definition, equitable estoppel may be invoked to vary the express terms of a contract where, because of certain subsequent conduct of the parties, enforcement of its literal provisions would work an injustice.Bank of Huntsville v. Witcher, 336 So.2d 1384 (Ala.Civ.App. 1976). On the other hand, the mere making of late payments by the debtor and their acceptance by the creditor does not alter, as a matter of law, the express terms of either the acceleration or the nonwaiver of acceleration clauses of the security agreement. Putman Realty Auction, Inc. v. Bailes,371 So.2d 658 (Ala. 1979).
Ordinarily, then, the applicability vel non of the equitable estoppel doctrine is a fact issue. Like other issues of fact, it may be reduced to a question of law, if the evidence adduced is not susceptible to different reasonable inferences; i.e., the fact finder is precluded from making a factual determination of whether estoppel exists in a particular case only where the evidence, or any reasonable inference therefrom, fails to furnish a scintilla in support of its application.Draughon v. General Finance Credit Corp., 362 So.2d 880, at p. 884 (Ala. 1978), states:
 "Because the doctrine of estoppel is for the protection of innocent persons, it is essential that the party claiming the benefit of estoppel does not predicate his claim on his own dereliction of duty or wrongful conduct.
 "Where a party seeks an equitable remedy, such as equitable estoppel, the party's conduct must reflect the maxim of `clean hands,' for any unconscientious conduct arising out of the subject matter of the suit will bar their action. Anders v. Sandlin, 191 Ala. 158, 67 So. 684 (1914).
 "In this case, the plaintiff not only changed his residence without notifying the defendant, but he also concealed his phone number so as to avoid `creditors' calls. We think that this conduct bars the plaintiff's assertion of estoppel [as a matter of law]." *Page 10 
Draughon, supra (cited in Hale), is an example of a factual situation unsusceptible to inferences from which the fact finder could invoke the doctrine of equitable estoppel in favor of the debtor.
Putman Realty Auction, Inc. v. Bailes, supra, is an example of an evidentiary situation susceptible of different reasonable inferences, giving rise to a factual determination of the estoppel issue. The Putman Court, at p. 659-60, observed:
 "The law is to the effect that where evidence of estoppel is present and susceptible to different reasonable inferences, the issue is one for the jury [citing Draughon].
". . .
 "The [trial] judge . . . correctly instructed the jury concerning the defendants' burden of proving that they justifiably relied upon the prior conduct of [the seller] as evidencing an intention upon her part not to insist upon prompt payment of monthly installments.
". . .
 "We find that the verdict of the jury is supported by credible evidence. . . ."[2]
Here, we will assume, without deciding, that an issue of fact, bearing on the applicability of estoppel, is presented by the evidence. We hold, consistent with Central Bank's secondary contention, that the evidence of record amply supports the trial court's finding, sitting without a jury, that the elements of equitable estoppel were not present; and, thus, Central Bank was not estopped to enforce its right of foreclosure according to the terms of the two security instruments. The presumption of correctness rule is not overcome by a preponderance of evidence favorable to Appellant; nor do we view the judgment appealed from as palpably wrong or manifestly unjust. Garrison v. Grayson, 284 Ala. 247,224 So.2d 606 (1969).
Consequently, the action of the trial court in denying Appellant's request for injunctive relief was proper; and its judgment, therefore, is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] See the late charges provision of this mortgage quoted in Part I of this opinion.
[2] In addition to the general discussion of the doctrine of estoppel contained in Draughon and Putman, see Bank ofHuntsville v. Witcher, 336 So.2d 1384 (Ala.Civ.App. 1976), for a listing of the elements of estoppel.