Although several issues are presented for review, the issue which is dispositive of this appeal involves the question of whether a security agreement can be modified either orally or by waiver if the security agreement requires that all modifications be in writing. The directed verdict of the trial court is affirmed.
On November 1, 1976, Curtis Williams, plaintiff-appellant, entered into a contract to purchase a 1974 Oldsmobile from Joe Meyers Ford in Houston, Texas. The contract was financed through Ford Motor Credit Company (FMCC), the defendant-appellee. Thirty payments of $136.40 were to be made, commencing December 7, 1976, with subsequent payments to be made on the like day of each month thereafter.
The payment which was due on February 7, 1977, was not timely made, but on March 4, 1977, Mrs. Williams mailed two money orders to FMCC, one in the amount of $151.40 to include payment, plus late charges, for February, and another in the sum of $136.40 to be applied on the March 7, 1977, payment. On March 5, 1977, the vehicle was repossessed.
Mr. James Osbourn testified on behalf of FMCC that the two payments in question were received by FMCC on March 7, 1977, which was Monday after the unit was repossessed on Saturday. The deposition testimony of Samuel Wright, who was employed by the Houston West Branch of FMCC, indicated that as Customer Account Supervisor, he had custody and control of William's file. On March 4, 1977, Wright initiated action to repossess the car and accelerated the contract balance by means of a mailgram. He did so, he stated, after reviewing William's account and ascertaining that Williams was located in Mobile, and seeing that Williams was past due and that default in the March payment was imminent. FMCC had tried to contact Williams by phone, but his telephone was not in service. Williams stated that he had moved from Houston to Mobile on about the 11th or 12th of February, 1977, but he did not notify FMCC of his change in address. An independent contractor was employed by FMCC to repossess the vehicle.
By affidavit and by deposition, Mrs. Williams stated that she made a long distance telephone call to FMCC on or about March 3 or 4. She stated that the substance of the call was that a representative of FMCC told her if the Williamses sent in two payments plus the $15.00 late charge, there would be no problem with the account. FMCC's motion in limine to suppress this evidence was granted over objection. The trial court sustained objection to Mrs. Williams's testifying that she made the call to FMCC.
After repossessing the automobile, FMCC, by letter dated March 11, 1977, sent Williams a notice of private sale. This notice informed Williams he had 10 days in which to redeem the automobile. It also stated that Williams would be liable for any deficiencies. William's attorney, on March 7, 1977, contacted FMCC by telephone and demanded return of the automobile because of the two payments submitted. FMCC denied that any employee of FMCC ever received a letter confirming the call.
Williams commenced this action against FMCC and other named defendants who were later dismissed from the case. The complaint, as amended, contained five counts seeking damages for the wrongful detention and conversion of a vehicle and the two money orders, and for fraud and misrepresentation. Williams sought $50,000 in damages under each of the first four counts, and $1,000,000 under the fifth count.
At the close of the plaintiff's evidence, FMCC submitted a written motion for directed verdict. After lengthy argument, this motion was later granted as to counts 3, 4, and 5. At the close of all the evidence, FMCC filed a further motion for directed verdict, which was granted as to the remaining *Page 68 
two counts in the complaint. Williams's motion for J.N.O.V. or in the alternative a new trial was denied. This appeal followed.
We think our decision in Hale v. Ford Motor Credit Co.,374 So.2d 849 (Ala. 1979), in which this Court delineated the rights and obligations of the parties under the terms of a security agreement containing both a non-waiver acceleration clause and a non-modification clause, is controlling here. InHale, supra, this Court ruled that the secured party is not required to give notice to the debtor prior to repossession, even though past-due payments have been accepted on previous occasions. Further, this Court concluded that a security agreement is effective according to the terms expressed in the agreement and that the inadvertence of the debtor in failing to make timely payments cannot raise an estoppel against the contractual interest of the creditor under the express terms of the security agreement, when there has been no written modification as required by the terms of the agreement. 374 So.2d at 853; McAllister v. Langford Investigators, Inc.,380 So.2d 299, 300 (Ala.Civ.App. 1980).
Assuming, arguendo, that Mrs. William's telephone conversation on March 3 or 4, 1977, was admissible to show that the contract between the Williamses and FMCC had been modified to extend the time for payment, that testimony would not change the outcome of this case since the security agreement expressly provided that any modification of its terms must be in writing. Likewise, the acceptance of the late payment could not, without a writing evidencing the modification, operate as a waiver of default. Thus, we need not decide whether the trial court erred by granting the motion in limine as to Mrs. Williams's testimony concerning the telephone call.
Mr. Wright testified that he exercised FMCC's right to accelerate the contract on March 4, 1977, by mailgram, because the appellant was in default on his February 7, 1977, payment. Paragraph 19 of the security agreement provides in pertinent part:
 "Time is of the essence of this contract. In event Buyer defaults in any payment . . . Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable and Seller shall have the right to repossess the property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale. Seller shall have the right to retain all payments made prior to repossession and Buyer shall remain liable for any deficiency. Buyer agrees to pay . . . expenses incurred by Seller in effecting collection, repossession or resale hereunder. Seller's remedies hereunder are in addition to any given by law and may be enforced successively and concurrently. Waiver by Seller of any default shall not be deemed waiver of any other default."
The evidence shows that FMCC received on March 7, 1977, subsequent to the acceleration and repossession, two money orders which, acceleration and repossession aside, would have made the appellant's account current through March 1977; however, in repossessing the automobile, FMCC incurred expenses of $323.50, which it was also entitled to recover.
We agree with FMCC that under the terms of the security agreement, its right to repossess the vehicle due to the default of the appellant existed independently of any right to accelerate the indebtedness due to that default. See Ford MotorCredit Co. v. Hunt, 241 Ga. 342, 245 S.E.2d 295 (1978). Consequently, the acceptance by FMCC of the late payment for February and the timely payment for March did not nullify the acceleration nor the remainder of the indebtedness; rather the payments received on March 7 must be considered as payments on the full indebtedness due on the appellant's account immediately after repossession on March 5. See Adamson v. Trust Co. Bank,155 Ga. App. 646, 271 S.E.2d 899 (1980). Had the appellant paid the entire contract balance, plus expenses incurred by FMCC in retaking the collateral, he would have been entitled to redeem the vehicle. The facts indicate, however, that *Page 69 
the appellant did not redeem the automobile.
In a directed verdict case, such as the one here, the function of this Court is to view the evidence most favorably to the non-moving party; and if, by any interpretation, the evidence can support any inference supportive of a conclusion in favor of the non-moving party, we must reverse. Herston v.Whitesell, 374 So.2d 267, 270 (Ala. 1979). After a review of the record, we conclude that there was no factual dispute requiring the trial court to submit the case to the jury; therefore, the trial court did not err in granting the directed verdict.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.