# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 27, 2011

No. 10-41063

Lyle W. Cayce
Clerk

REGIONS EQUIPMENT FINANCE CORPORATION,

Plaintiff-Appellee

v.

AT 2400, Official Number 530775, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; AT 1400, Official Number 279236, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; ACCU III, Official Number 514466, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; AT 3010, Official Number 1080340, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; AT 3014, Official Number 1086811, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; AT 3008, Official Number 1080268, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; ACCU VII, Official Number 520332, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; AT 1401, Official Number 295706, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; ACCU XI, Official Number 536661, her engines, tackle, furniture, apparel, appurtenances, etc., in rem; ACCUMARINE TRANSPORTATION, LP, in personam,

Defendants-Appellants

Appeal from the United States District Court
for the Eastern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellee Regions Equipment Finance Corporation (REFCO) sued Defendant-Appellant Accumarine Transportation, L.P. ("Accumarine"), *in*

No. 10-41063

*personam*, and also sued a number of Accumarine's vessels, Defendants-Appellants AT 2400, AT 1400, ACCU III, AT 3010, ACCU VII, ACCU XI, *in rem*, for breach of contract. The suit is based on Accumarine's failure to make payments due on four promissory notes held by REFCO and on Accumarine's default on loan agreements to cover those notes. Accumarine does not dispute REFCO's allegations of breach of contract but asserts defenses of promissory and equitable estoppel. The district court granted REFCO's motion for summary judgment, determining that Accumarine's defenses are not assertable under Alabama law and that there remains no genuine issue of material fact that Accumarine has breached its contract with REFCO. We affirm on the basis that Accumarine may not assert its defenses pursuant to the specific provisions of the contract, under either maritime law or Alabama law.

## I.  FACTS & PROCEEDINGS

### A.  Facts

REFCO is an Alabama corporation that entered into a loan agreement with Accumarine in 2007 on some of Accumarine's vessels. The agreement was amended three times, with each of the subsequent agreements supported by a separate promissory note requiring monthly payments of equal amounts and a final balloon installment of principal and interest due in 2012. The Third Amended Loan Agreement (the "Agreement") was secured by a First Preferred Fleet Mortgage (the "Preferred Mortgage"), which encumbered four of Accumarine's vessels for which the loan had been granted.

Accumarine has not made a principal payment under the Agreement since December 2008 and has not made an interest payment since June 2009. At the time that Accumarine defaulted under the Agreement, some of the Agreement's guarantors were in default under a separate loan with REFCO (the "Dunhill Note").

2

No. 10-41063

Accumarine alleges—and REFCO disputes—that the guarantors sought to negotiate the Dunhill Note and Accumarine's debts simultaneously with REFCO, but that REFCO refused to do so and instead required the guarantors to negotiate the Dunhill Note first. Accumarine claims that REFCO promised: (1) REFCO would not take action on Accumarine's debt to REFCO if the Dunhill Note was resolved first, and (2) REFCO would notify Accumarine before taking any action on Accumarine's loan. Accumarine also asserts that it relied on these oral promises when it postponed efforts to find an investor to whom Accumarine could sell the Preferred Mortgage.

Accumarine does not dispute that it has (1) failed to pay the monthly installments as scheduled, (2) not provided the required financial statements, and (3) incurred competing liens—each of which constitutes an act of default under the Agreement

## B. Proceedings

On April 14, 2010, REFCO filed suit against Accumarine, *in personam*, and against the vessels encumbered by the Preferred Mortgage, *in rem*. REFCO filed a motion for summary judgment, contending that it had established that Accumarine was in default under the Agreement and that the Preferred Mortgage gave rise to a preferred mortgage lien against Accumarine's vessels in the amount of the indebtedness. In response, Accumarine contended that REFCO was estopped from enforcing the Preferred Mortgage and collecting the notes under principles of promissory and equitable estoppel, based on the alleged oral promises made by REFCO to Accumarine's guarantors.

The district court entered an order granting REFCO's motion for summary judgment, ruling that Alabama law applied to the contractual dispute and that Alabama's Statute of Frauds barred evidence of REFCO's alleged oral promises

No. 10-41063

to Accumarine, which were the only bases of Accumarine's affirmative defenses. Accumarine timely filed a notice of appeal, challenging the district court's summary judgment disposition.

## II.  ANALYSIS

### A.  Standard of Review

We review a district court's summary judgment disposition de novo, applying the same legal standards as the district court.[1] The district court appropriately grants a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

### B.  The Agreement Preempts the Conflicts-of-Law Issue

At the outset, we consider the Agreement's "ENTIRE AGREEMENT" clause relating to amendments, which states in full:

> Section 9.10 <u>ENTIRE AGREEMENT: AMENDMENT</u>. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REFERRED TO HEREIN EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO. The provisions of this Agreement and the other Loan Documents to which Borrower or any Guarantor is a party may be amended or waived only by an instrument in writing signed by the parties hereto.[3]

---

[1] *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011) (citation omitted).

[2] FED. R. CIV. P. 56(a).

[3] (capitalization and emphasis in original).

No. 10-41063

The district court acknowledged this clause only when it applied Alabama law, explaining that *even if* Accumarine could assert the defenses of promissory and equitable estoppel here, those defenses would fail under Alabama's reasonable reliance test because "Accumarine's reliance on [REFCO's] promises could not be reasonable, in light of [this clause of the Agreement]." Before we even reach the conflict-of-laws issue, however, we read this clause as specifically controlling the discrete issue on appeal, i.e., whether Accumarine may assert estoppel defenses to breach of contract based on alleged oral amendment of the Agreement.

Accumarine contends that the "no oral modification" clause is not enforceable because "contracting parties may undo their agreements." Although this proposition was true under "traditional common law," as Accumarine duly cites, today this common law rule is not always followed. The D.C. Circuit has noted that "[i]n modern times the common law rule has been discarded in broad areas," including by the Uniform Commercial Code (UCC).[4] The D.C. Circuit further explained, in the context of a collective bargaining agreement, that the UCC rule should apply instead of the traditional common law rule when: (1) the parties are "sophisticated," (2) the agreement is the "product of substantive negotiations between intensely interested parties, usually advised by specialized counsel," and (3) there is no "fear that either party may have missed the fine print or somehow been taken advantage of in agreeing that there shall be no oral modifications."[5] Notably, the D.C. Circuit ultimately concluded:

---

[4] *Martinsville Nylon Employees Council Corp. v. N.L.R.B.*, 969 F.2d 1263, 1267 (D.C. Cir. 1992) (quoting U.C.C. § 2-209(2)) (internal citations omitted).

[5] *Id. See also id.*:

The drawback of the common law rule is that it denies to all contracting parties, no matter how sophisticated, the ability to decide for themselves whether to restrict the manner in which their agreement may be modified. The UCC rule, on the other hand, enables those parties who mutually value certainty in their

5

No. 10-41063

We need not finally choose today between the common law and UCC rules concerning no-oral-modification clauses, however, because the [agreement] before us also contains an "entire agreement" clause. Whatever the ultimate merits of the common law rule denying effect to the no-oral-modification clause, *by including the entire agreement clause the parties here made clear beyond doubt their intention not to be bound to any informal arrangement* to which they might voluntarily adhere during the term of their [agreement]. In effect, each told the other: "If you want anything else, you'll have to get it in writing," and to this both agreed.[6]

Here, the "entire agreement" clause itself includes the "no oral modification" clause, which provides that the Agreement "may be amended or waived only by an instrument in writing signed by the parties hereto." In addition, there are *two* reiterations: (1) "THIS AGREEMENT . . . MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF . . . SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO" and (2) "THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO." There is no doubt about the parties' intention not to be bound by future oral promises purporting to amend the Agreement.

First, under existing maritime law, there is not a clear answer to whether this combination "entire agreement" and "no oral modification" clause is necessarily unenforceable. It is true that maritime law allows oral modifications for maritime *employment* contracts, which may be valid even if made orally in their entirety.[7] But, without exception, a preferred ship mortgage contract, like

---

relations to have it; under the UCC rule, moreover, no one has to agree to rule out oral modifications nor, having so agreed, are the parties precluded from executing a mutually agreeable modification.

[6] *Id.* at 1268 (emphasis added).

[7] *See Kossick v. United Fruit Co.*, 365 U.S. 731, 734 n.4 (1961).

6

No. 10-41063

the one in the instant case, must be in writing to be valid.[8] Accordingly, the D.C. Circuit's criteria apply more fittingly in the ship mortgage context than in the maritime employment context: Both parties here are sophisticated companies; the Agreement and Preferred Mortgage were the product of substantial negotiations, with the negotiated loans aggregating more than $20 million; and there is no fear that Accumarine may have missed the fine print or somehow been taken advantage of in agreeing that the Agreement and Preferred Mortgage could not be modified orally.

Second, under Alabama law, the Agreement's "no oral modification" clause would be enforceable. The Alabama Supreme Court has enforced such clauses in the past.[9] The Alabama Supreme Court has also enforced "entire agreement" clauses by applying "[g]eneral canons of contract construction" and concluding that "because [the parties] expressly stated that the [contract] constitutes the 'entire agreement' between them, we will enforce the plain meaning of those words by treating the [contract] as the entire agreement between the parties."[10]

---

[8] *See* 46 U.S.C. § 31321 ("A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made . . . must be filed with the Secretary to be valid . . . .").

[9] *See Pavco Indus. Inc. v. First Nat'l Bank of Mobile*, 534 So. 2d 572, 576 (Ala. 1988):

[Plaintiff borrowers] argue that [the defendant bank's] assurances became part of the contract and that it was therefore a breach of contract to fail to comply with those assurances. The fatal flaw in this argument, however, is that the note included the following provision: "This agreement shall be changed only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought." Thus, there can be no oral modification of the written note and security agreement.

(citing *Williams v. Ford Motor Credit Co.*, 435 So. 2d 66 (Ala. 1983)).

[10] *See Ex parte Conference America, Inc.*, 713 So. 2d 953, 956 (Ala. 1998). *See also Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000) ("Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract.").

No. 10-41063

As this clause is enforceable under both maritime and Alabama law, we need not decide the choice-of-law issue. Rather, we hold that the Agreement's "entire agreement" clause defeats Accumarine's defenses of promissory and equitable estoppel.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of REFCO.

AFFIRMED.