298 A.2d 521.

LOUIS J. FONTAINE *vs.* INDUSTRIAL NATIONAL BANK OF RHODE ISLAND.

JANUARY 9, 1973.

PRESENT: Roberts, C.J., Paolino, Powers and Kelleher, JJ.

POWERS, J. This is a civil action to collect damages for an alleged unwarranted repossession of the plaintiff's automobile.

The case was tried to a Superior Court justice who, sitting without a jury, rendered a decision for plaintiff in the sum of $3,500. It is before this court on defendant's appeal from the judgment accordingly entered.[1]

The pertinent facts are neither disputed nor complicated. They establish that on February 25, 1970, plaintiff purchased a 1970 Lincoln Continental Mark III from Shore City Lincoln-Mercury, Inc. As part of the transaction, plaintiff entered into a retail installment contract with the seller. It, in turn, assigned the contract and note to the defendant bank, subject to terms and conditions including a repurchase agreement which was conditioned on defendant presenting the security to the seller within 90 days of default.

At the time plaintiff purchased the 1970 Lincoln, he was the owner of a 1969 Mercury, the value of which the seller appraised at $3,600.50. However, plaintiff owed a balance on the Mercury of $2,981.50. This gave plaintiff an equity in the Mercury of $619, which is the amount credited to plaintiff by seller against the purchase price of the Lincoln. Moreover, plaintiff also paid $1,000 cash, giving him a total equity in the 1970 Lincoln, at the time of purchase, of $1,619.

---

[1]The defendant makes no contention as to the correctness of the damages awarded, hence, that question was not considered.

The purchase price of the Lincoln was $8,759 which reduced by said $1,619 left a balance of $7,140.

To this were added $132.01 for credit life insurance, a two dollar filing fee and a finance charge of $1,526.55. This made for a total obligation of $8,800.56.

Under the contract, plaintiff promised to repay the loan in 36 monthly installments of $244.46 beginning March 26, 1970,

> " * * * with a 'late charge' of five cents (5¢) per dollar of each installment hereof which is not paid in full within fifteen (15) days after the due date of such installment or the sum of Five Dollars ($5.00), whichever is less * * *."

The plaintiff made a total of eight such payments. The payments due for the months of March through July were made within 15 days from the 26th of the previous month. The payment which became due as of August 26, 1970, however, was made by a check which was three times dishonored and not finally credited to plaintiff until October 6, 1970. Meanwhile, another payment had become due as of September 26, 1970, and this was not made until October 23, 1970. The payment due as of October 26, 1970, was made on November 10, 1970.

Thereafter, on December 3, 1970, at which time plaintiff had not made the payment due as of November 26, 1970, an installment loan collector of defendant bank, received an anonymous telephone call. The caller informed the loan officer that plaintiff was preparing to leave for Florida. Coincidentally, on the same day, said loan officer learned from another agent of the bank that the car was being serviced at a garage near plaintiff's home. The agent giving this information had been previously assigned to contact plaintiff in connection with the aforementioned August and September defaults. Seeing the car at the garage in question on December 3, he called the collection officer to ascertain plaintiff's status.

Thus learning of the car's location on the day that he received the anonymous call, and having in mind plaintiff's record of erratic payments on the loan, he concluded that the security was in jeopardy and caused the car to be repossessed. In consequence, plaintiff commenced the instant action.

The plaintiff, in his complaint, predicated his cause of action on wrongful repossession. Answering, the bank defended on the ground that plaintiff was in default at the time the car was repossessed.[2]

In giving decision for plaintiff, the trial justice found in effect, that plaintiff was in default of the payment due on November 26, 1970. He noted, however, that such default was, in his words, "not too serious," in that, as he viewed it, the "total default was eight days." Moreover, in the judgment of the trial justice, defendant bank acted in bad faith when it repossessed without giving plaintiff notice of its intention.

In urging before us that the trial justice's decision is clearly wrong, defendant bank rests its appeal on the proposition that the trial justice erred in holding that, notwithstanding plaintiff being in default, defendant bank was precluded from exercising its right to repossess.

This is so, it primarily argues, because the fact of default gave defendant bank a contractual and statutory right to repossess regardless of what the trial justice may have considered to be circumstances mitigating the default. But even if this were not so, it further argues, the decision is clearly erroneous in that the trial justice's view of what he concluded were mitigating circumstances, is based on a misconception and overlooking of material evidence.

---

[2] It is not disputed that by the terms of both the sale agreement and the Uniform Commercial Code, specifically G. L. 1956 (1969 Reenactment) §6A-9-503, defendant as assignee of the seller had the right to repossess in the event of a default by plaintiff.

In view of what we consider to be the controlling issue, neither contention requires discussion.[3]

From what has heretofore been narrated, it is obvious that the trial justice considered plaintiff in default because the payment due as of November 26, 1970, had not been made at the time the car was repossessed. This consideration, however, completely overlooks the right of plaintiff, as provided by the sales agreement, to make payment within 15 days of the date that each payment became due.

The defendant bank does not dispute plaintiff's right to make a payment that would be timely if made within 15 days of the date that each payment became due. What it does argue is, that by the terms of the sales agreement, acceptance of payments made after plaintiff was in default would not constitute a waiver of such rights as inured to the seller or its assignee upon default.

Specifically, it points to the uncontradicted fact that the payment due as of August 26, 1970, was not made until 40 days thereafter, namely, on October 5, 1970. Continuing, the payment due as of September 26, 1970, was not made until October 23, 1970, 27 days after the date as of which it was due.

The provision of the sales agreement on which defendant bank relies provides in pertinent part:

> "If Buyer shall default in the payment of any installment * * * all installments remaining unpaid shall, at the election of Seller, and without notice to Buyer, become immediately due and payable. The payment and acceptance of any sum on account shall not be considered a waiver of such right of election."

---

[3]The instant case was decided in the Superior Court and argued on appeal in this court prior to the filing of *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Consequently, although the *Fuentes* decision appears to raise grave doubts as to the constitutionality of both statutory and contractual self-help repossession, it was not argued by the parties in the instant appeal. Thus, we were not called upon to consider the effect of *Fuentes* on the circumstances here.

Relying on the foregoing, defendant bank takes the position that its acceptance of the October 5, October 23 and November 10 payments did not deprive it of the right that it clearly had on the 16th day after August 26th. Consequently, it is defendant bank's position that plaintiff's payment of the obligation due as of October 26, 1970, within the 15-day grace period, is without legal significance. Assuming for the sake of argument that such position is sound we nevertheless cannot agree that the trial justice erred in giving decision for plaintiff. We are so persuaded because we believe that just as defendant bank had the right to demand payment in full or repossess at its election once plaintiff defaulted, the latter had the right to have the demand for payment made before repossession was proper. This court reached the same conclusion in *Mosby* v. *Goff*, 21 R. I. 494, 44 A. 930 (1899). There, defendant vendor to a conditional sales agreement of a piano which was to be paid for by weekly installments of one dollar accepted late payments but subsequently, after the time for other payments had passed, entered plaintiff's premises and repossessed the piano. This court held, in substance, that having accepted late payments the defendant vendor placed itself in the position of giving plaintiff vendee the right to have the full sum due demanded before the defendant vendor could repossess.

In adhering to the rationale of *Mosby* v. *Goff, supra,* we are not unmindful that there does not appear to have been a provision in the sales agreement of the cited case as there is here that the right of election to full payment or in lieu thereof repossession inures without notice. We think it to be so unconscionable as to be against public policy to give judicial sanction to an arrangement whereby a conditional sales vendee, once in default, is in constant peril of having the chattel summarily repossessed even though said vendee.

has been in faithful compliance with periodic payments for months or even years after the original default.

Here for example, although the period of time between default and repossession was a little less than three months, defendant bank, on its theory, could repossess in December, 1972, two years later than when it did, even though in the intervening years, plaintiff had met every monthly obligation on time.

The defendant's appeal is denied and dismissed and the judgment appealed from is affirmed.

Mr. Justice Joslin did not participate.

*Gerald M. Brenner*, for plaintiff.

*Monti & Monti, A. David Tammelleo*, for defendant.