GENERAL GROCER COMPANY OF ILLINOIS, Plaintiff-Appellee, *v.* BRUCE A. BACHAR *et al.*, Defendants-Appellants.

Third District No. 76-240

Opinion filed July 11, 1977.

Louis J. Perona, of Perona & Perona, of Spring Valley, for appellants.

Guy C. Fraker, of Costigan, Wollrab, Fraker, Wochner & Neirynck, of Bloomington, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Bureau County which after hearing in a replevin action awarded possession of a grocery store inventory to General Grocer Company of Illinois, hereinafter referred to as the plaintiff, on the grounds that Bruce A. Bachar and Mary Bachar, hereinafter referred to as the defendants, had defaulted in a security agreement which they had entered into with the plaintiff.

The factual situation which ultimately resulted in the litigation commenced in the year 1975 when the defendant Bruce A. Bachar purchased a grocery store in Spring Valley, Illinois. The plaintiff financed this purchase and the original amount owed by the defendants was the sum of $115,909.10. From the record we fail to find that there was any written instrument entered into by the parties regarding this indebtedness as to the time and manner of paying it. In September 1975 the defendants paid the sum of $20,000 on their purchase price indebtedness, thereby leaving a balance to be paid in the sum of $95,909.10.

The defendants purchased groceries from the plaintiff each week and every Monday the plaintiff would compute a bill for the amount of the preceding week's grocery shipment. The plaintiff after performing such accounting work would write a check payable to itself on an account in the joint names of itself and the defendants. After the check had been presented for payment and honored a copy of the paid bill would then be mailed to the defendants' store.

The plaintiff and defendants did enter into a written security agreement, the pertinent provisions of which are as follows:

"V. Until default or breach by the undersigned of any provision hereof, or until notified by Lender to the contrary, the undersigned may use, consume, exhibit, sell or otherwise dispose of the Inventory in carrying on the business of the undersigned in the ordinary course substantially in the manner as now conducted * * *.

VI. If the undersigned shall fail to pay when due, any note or any other of the undersigned's indebtedness to Lender, or should breach any other provision hereof, Lender shall have the right to proceed against the collateral or any part thereof.

VII. No failure or delay by Lender in exercising any right or remedy hereunder or otherwise shall operate as a waiver thereof. A waiver of any such right or remedy must be in writing and shall be limited to the specific instance and to the right or remedy expressly waived * * *."

The store's inventory merchandise and certain fixtures were collateral for the security agreement.

While the defendants may have been tardy in two or possibly three instances in making a deposit in the joint account for the payment of the groceries received by them for the preceding week from the plaintiff, the great majority of the time the defendants conformed to the agreement and practice of making the required deposit on each Monday.

Grocery shipments were made by the plaintiff to the defendants for the week of January 5, 1976; however, on Monday, January 12, 1976, the defendants failed to deposit in the joint account a sum of money sufficient to pay the plaintiff's billing in the amount of $8,587.12 for the preceding week's delivery. The defendants had used some of the proceeds from the sale of groceries for the preceding week to pay other creditors.

On January 13, 1976, Mr. Hargis, representing the plaintiff, went to the defendants' store and requested payment of the $8,587.12. The defendant Bruce A. Bachar indicated that he did not have the money since he was paying other creditors. On the following day Hargis again saw the defendant and both orally and in writing gave the defendants notice of their default in payment of the underlying obligation of $95,909.10 and of

the payment of $8,587.12. Hargis further demanded possession of the collateral and directed the defendants to cease selling the pledged collateral. The defendant Bruce A. Bachar indicated that he couldn't pay the amounts owed and that he would continue to sell collateral and he in fact continued to do so until January 16, 1976, on which date a writ of replevin was issued against the defendants. The writ was served on the defendants the following day.

On February 18, 1976, after a trial on the issues the trial court ruled that the plaintiff was entitled to possession of the grocery store's inventory and other collateral set forth in the security agreement because the defendants were in default in two respects, first in continuing to sell collateral after the demand of January 14, 1976, and secondly in failing to pay the sum of $8,587.12. The trial court expressly stated that it was not making any ruling as to whether there was a default for failure to pay the underlying obligation of $95,909.10. This appeal ensued.

The defendants raise several issues in this appeal, the first being that there was not sufficient evidence adduced during the course of the trial to establish an agreement requiring the defendants to pay for weekly grocery deliveries on a certain date.

In support of this contention the defendants assert that all of the documents signed by them were silent as to time of payment. Further they argue that the plaintiff's claim that they were in default is based upon the testimony of Hargis, an employee of the plaintiff, concerning vague and oral statements he made to the defendants about the plaintiff's billing policy. The defendants state that there was no valid contract in issue between the parties because there was never a meeting of the minds of the parties.

Directing our attention to the weekly payment by the defendants for groceries received we find that the record belies their argument. When the defendants began operating their store they followed the practice of depositing on each Monday in the joint account a sufficient sum of money to pay for the cost of groceries supplied to them during the preceding week by the plaintiff. As we have stated they may have been tardy on two or possibly three occasions during December 1975; however, within a matter of two or three days they made up their deficit in each instance. It was not until January 12, 1976, that the defendants flatly refused to make the usual weekly deposit in the joint account. An even more compelling refutation of the defendants' argument that there was no meeting of the minds of the parties is established by the testimony of the defendant Bruce A. Bachar. On direct examination he stated:

> "Overdue meant that the bill for the previous week's groceries was due on Monday. On Monday, the payment for the preceding week's groceries was due."

On cross-examination the same defendant stated:

> "On Monday, January 12, the sum of $8487.00 was due for the week's preceding billings. I did not pay that bill and there were not sufficient funds deposited to cover that amount."

■■ While the defendant Bruce A. Bachar suggests that there was no agreement as to a set date for the payment of groceries received from the plaintiff, his own testimony destroys that suggestion. The trial court found that an oral contract existed between the parties which embodied terms as to time of payment. The question of whether a contract exists, its term and intent of the parties are questions of fact to be determined by the trier of fact. (See *Trustees of Schools v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431.) A reviewing court may not reverse the judgment of a trial court merely because different conclusions could be drawn. An opposite conclusion must be clearly evidenced from all the evidence before the trial court's judgment can be reversed. (See *Orput-Orput & Associates, Inc. v. McCarthy* (1973), 12 Ill. App. 3d 88, 298 N.E.2d 225.) After examining the record in the instant case we quarrel not with the trial court's determination that a contract existed between the parties relating to the payment for groceries and such contract embodied an agreement as to time of payment.

The defendants next contend that forfeitures should not be allowed unless the right to forfeiture is clearly demonstrated. We agree with the defendants' observation that forfeitures are not looked upon with favor. (See *Cantrell v. Kruck* (1975), 25 Ill. App. 3d 1060, 324 N.E.2d 260.) It should be noted, however, that in the *Cantrell* case the reviewing court found that there was no meeting of the minds of the parties as to the exact closing date of a real estate transaction. The defendants cite also the case of *Krentz v. Johnson* (1976), 36 Ill. App. 3d 142, 343 N.E.2d 165; however, we note that in the *Krentz* case a forfeiture was not allowed because the purchasers of real estate had made expenditures in excess of $33,500 and were in default in an interest payment in the sum of only $182.81.

■■ Without delving into a repetitious recital of the facts in the instant case we find that it is clearly apparent that the defendants were in default on January 12, 1976, in the sum of $8,587.12. A subsequent demand for payment by the plaintiff was of no avail since the defendants acknowledged that they were paying other creditors. The defendants further ignored the plaintiff's request to cease selling merchandise even though such merchandise or inventory was a part of the collateral for the security agreement entered into between the parties. In view of the fact that the principal portion of the collateral for the security agreement was disappearing with each passing day we are of the opinion that the plaintiff clearly had the right to declare a forfeiture.

The defendants further claim that the plaintiff's conduct in accepting

late payments suspended any agreement requiring payment on a date certain.

The testimony in the instant case is highly controverted as to whether the defendants were frequently late or rarely late in paying the plaintiff for groceries delivered. We, however, do not consider the practice of the defendants in making timely or untimely payments to be of any great import in view of the terms of the security agreement. The agreement contained a specific provision relating to the plaintiff's waiver of any right or remedy to which it was entitled under the agreement. That agreement provides as follows:

"VII. No failure or delay by Lender in exercising any right or remedy hereunder or otherwise shall operate as a waiver thereof. A waiver of any such right or remedy must be in writing and shall be limited to the specific instance and to the right or remedy expressly waived * * *."

■■ The cases cited by the defendants have little if any bearing on the question of waiver in the instant case. None of them are concerned with a situation where a "non waiver" clause is present such as the one contained in the security agreement entered into by the parties in this case. In the light of such "non waiver" clause, which was agreed to by the defendants, we cannot interpret the plaintiff's conduct in accepting tardy payments (whether such instances be many or few) to constitute a suspension of the terms of an agreement to make payments on a date certain.

The defendants next urge that their default was cured by the tender of the payment of $8,587.12 prior to the repossession of the collateral.

■■ The defendants subsequent to January 12, 1976, did tender the sum of $8,587.12 to the plaintiff conditioned upon the commitment of the plaintiff that it would defer an immediate demand for the original obligation in the sum of $95,909.10. The trial court made no finding concerning a default based upon the sum of $95,909.10 The defendants' obligations relating to this debt are not an issue in this appeal since the plaintiff instituted a suit for replevin based upon the defendants' failure to make timely payments for groceries received. We need not concern ourselves with the underlying obligation of the defendants in the sum of $95,909.10 in order to determine the last issue raised in this appeal by the defendants. We make this observation since it is clear that the plaintiff could reject the tender by the defendants of the sum of $8,587.12 by virtue of the terms of the security agreement. The agreement provided that the defendants could sell inventory until default *or* until notified to the contrary. The defendants assert that evidence does not sustain a default for nonpayment and thus there could be no default based upon their refusal to stop selling the inventory which constituted collateral for the security agreement. The defendant is ignoring the clear language of the

agreement. The agreement specifically uses the word "or." To support the contention of the defendants the word "and" would have to have been used in lieu of the word "or." The plaintiff clearly had the right to reject the late and conditional tender of payment of the sum of $8,587.12 by the defendants. The inventory which constituted collateral for the security agreement was in jeopardy and the continuous sale of the same after being requested to cease selling by the plaintiff was in violation of the security agreement and in fact served to make an untenable relationship between the parties.

Paragraph VI of the security agreement provided:

"If the undersigned shall fail to pay when due, any note or any other of the undersigned's indebtedness to Lender, *or should breach any other provision hereof*, Lender shall have the right to proceed against the collateral or any part thereof." (Emphasis added.)

The defendants were daily breaking the agreement by selling the inventory of the grocery store after being notified not to do so. They were fully aware of the fact that such inventory constituted collateral. When faced with such a situation the plaintiff was under no duty to accept a late tender of payment for groceries supplied by the plaintiff.

For the reasons set forth the judgment of the Circuit Court of Bureau County is hereby affirmed.

Affirmed.

STENGEL, P. J., and STOUDER, J., concur.