507 A.2d 203

**Jacqueline BATTISTA**

**v.**

**SAVINGS BANK OF BALTIMORE.**

**No. 1057, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 9, 1986.

258

Bradford G.Y. Carney (Matthew B. Ruble and Callahan, Calwell and Laudeman, on brief), Baltimore, for appellant.

Donna Hill Staton (Deborah E. Jennings and Piper & Marbury, on brief), Baltimore, for appellee.

Argued before ADKINS, BLOOM and ROBERT M. BELL, JJ.

ADKINS, Judge.

The basic issue presented in this appeal is: was there a jury question on the issue of whether appellee, Savings Bank of Baltimore, had waived its right to repossess the Honda automobile of appellant, Jacqueline Battista? Battista says the Bank's frequent acceptance of late payments without repossession provided sufficient evidence to take the waiver issue to the jury. The Bank argues to the contrary, emphasizing the presence of an anti-waiver provision in the installment sales agreement. There are subsidiary issues relating to the sufficiency of the evidence as to both compensatory and punitive damages if we agree with Battista that it was for the jury to decide whether the Bank wrongfully repossessed her car.

We shall outline the pertinent facts as we discuss the specific issues. First, we sketch the procedural posture of the case.

In January 1978, Battista purchased a 1978 Honda Civic from O'Donnell Pontiac, which assigned its retail installment sales agreement to the Bank. Battista made several monthly payments late. The Bank accepted these until October 1980. In that month, when Battista had not made her August or September payments, the Bank repossessed the automobile. Although the account was later brought current—in fact, advance payments were made—the Bank initially refused to return the vehicle upon Battista's request. Eventually the car was returned.

Battista then sued the Bank for conversion, negligence, and breach of contract, claiming both compensatory and punitive damages.[1] At the close of her case, the Circuit Court for Baltimore City granted the Bank's motion for judgment on the punitive damages claim. The remainder of

---

1. Battista also sued several other defendants, but none of them are involved in this appeal, so we need not discuss the outcome of her action against them. Nor need we consider the negligence and breach of contract claims against the Bank; the only liability issue now on appeal is based on the conversion count.

the case went to the jury, which brought in a verdict of $9,000 in favor of Battista and against the Bank. The Bank filed a timely motion for judgment n.o.v., the court granted it, and judgment was entered for the Bank. As to the conversion claim—the only ground for the Bank's liability asserted on appeal—the judge reasoned

> it boils down to whether or not there was evidence of conduct which insofar as the bank is concerned, whether there was evidence of conduct which presented a factual issue as to waiver or as to modification.
>
> Now, the terms of the contract are quite clear.... [T]he contract is quite clear that, as to when or whether a waiver or modification of the contract occurs....
>
> The conduct alleged during the trial of the case as to the bank, I find to be inadequate to produce a factual issue. At best the jury would, I think, was put in a position to speculate both as to damages and as to the issue of whether or not there was a waiver, and, of course, as to whether or not there was a conversion, inasmuch as the original taking was a legal one; then a conversion would not exist.

This appeal followed.

### Waiver and the Conversion Claim

Battista's conversion claim was based on the theory that the Bank was not authorized to repossess her car in October 1980.[2] If that theory is correct, there is no doubt that there was a conversion. " 'A conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right

---

**2.** On appeal, Battista raises an alternative theory of conversion: that the Bank was guilty of constructive conversion when it failed to return the car to her promptly after her account had been brought current. *See Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 502 A.2d 1057 (1986). This assertion comes too late. Battista's declaration did not allege it, the jury was not instructed on it (and Battista requested no instruction in this regard), nor was it argued to the jury. Since this point or question was neither raised nor decided below, we shall not consider it. Md. Rule 1085.

or inconsistent with it." *Interstate Insurance Co. v. Logan*, 205 Md. 583, 588–589, 109 A.2d 904 (1954). The Bank, on the other hand, points to the undisputed fact that when the car was repossessed, two monthly payments were past due. The agreement provided:

> In the event of a default ... the entire unpaid balance of the purchase price shall, at the option of the Holder [Bank], become immediately due and payable, and ... the Holder may, with or without legal process and with or without previous notice or demand for performance *enter into the premises where the vehicle may be ... and take* possession of the same ... [emphasis supplied].

Thus, says the Bank, there was no conversion; it merely exercised its rights under the agreement.

The central issue, as we have seen, is whether there was sufficient evidence for a fact-finder to decide that the Bank had, by its conduct, waived its contractual right to repossess upon default. The legal principle is well-established:

> The creditor may have waived the right to object to the default of the debtor, in which case repossession is wrongful. Waiver of default is commonly found in the creditor's accepting late payments without protest and in failing to notify the debtor that strict adherence to the agreement terms will be required.

9 R. Anderson, *Anderson on the Uniform Commercial Code* § 9–503:14 (3d ed.1985). To explore this central issue fully, we must now review in more detail certain facts adduced at trial. In doing so, we keep in mind that we are dealing with the granting of a motion for judgment n.o.v. Such a motion should be denied if there is any evidence from which a reasonable mind could infer the facts supporting the jury's verdict. In ruling on the motion the court must assume the truth of all credible evidence on the issue and must take that evidence and all inferences fairly deducible therefrom in the light most favorable to the party against whom the motion was made. If that evidence and those inferences are sufficient to lead to conclusions from which reasonable minds could differ, the motion must be

denied; the weight and value of the evidence is for the jury. *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 327, 389 A.2d 887 (1978); *McSlarrow v. Walker,* 56 Md.App. 151, 158, 467 A.2d 196 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984). From this perspective we review the record.

As we have said, Battista purchased her Honda in January 1978 from O'Donnell Pontiac. The transaction was memorialized in an agreement, on a form supplied by the Bank, and assigned by O'Donnell to the Bank. The agreement required Battista to make 42 consecutive monthly payments of $136.79 each, beginning on February 20, 1978. The amount of each payment included a sum for the purchase of credit life and credit disability insurance. The agreement included the "repossession upon default" provision we have already quoted, as well as the following:

> Failure of Holder to exercise any of the Holder's rights hereunder provided shall not be deemed a waiver thereof, and no waiver of any such rights shall be deemed to apply to any other of such rights, nor shall it be effective unless in writing and signed by the Holder.

At first all went well. Battista made payments regularly, and often on time, although some were a few days late. But in May 1979, Battista was injured in an accident, and as a consequence, disabled. She discovered that Geneva Life Insurance Company was carrying her disability credit insurance (we do not know who selected Geneva; it was not Battista) and she invoked the provisions of that insurance, by the terms of which Geneva was to make the monthly payments to the Bank.

The June 1979 payment was not paid on time and on July 10, the Bank sent Battista a notice saying it intended to repossess the car unless she made payment within ten days. Battista called the Bank, explaining that she was out of work and that Geneva would be making the payments. The Bank official to whom she spoke (Mr. Prescimone) said "we will wait awhile and see what happened." On July 18

Geneva sent the Bank a check for $136.79. The car was not repossessed.

During the summer Geneva at various times sent the Bank various checks for various amounts. These irregularities, it seems, occurred because Geneva required medical verification every 30 days that Battista's disability was continuing. Her doctor, however, did not wish to see her every 30 days, and did not wish to issue a certificate of disability when he had not seen her. As a consequence, Geneva received irregularly-timed disability certificates. Whenever it received a certificate, it sent the Bank a check, sometimes for more than a single payment. There was evidence that the Bank was aware of this circumstance. It accepted all of Geneva's checks.

On September 18, 1979, the Bank sent Battista another letter asserting that the August payment had not been made and threatening repossession unless she paid $136.79 plus late charges within ten days. Battista again phoned Prescimone and explained the situation. Geneva eventually made the payment. The car was not repossessed. This scenario was repeated following another repossession letter dated July 9, 1980. Both before and after that Geneva made its occasional payments, all of which were accepted by the Bank. The car was not repossessed.

Things came to a head in September 1980. By letter dated September 10, but apparently not mailed until September 23, the Bank demanded the August payment and again threatened repossession if payment was not received within ten days of September 10 (that critical date had passed before the letter was mailed). Battista again called the Bank "many times" and attempted to contact Prescimone, but he was never available and never responded to her messages to return her calls. On October 5 the car was repossessed. By October 16 the Bank had received enough payments to bring the account current through December 20. The Bank finally returned the car to Battista on November 25.

What legal conclusions can we draw from these facts? We turn first to the nature of waiver.

> A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. "[A]cts relied upon as constituting a waiver of the provisions" of a contract must be inconsistent with an intention to insist upon enforcing such provisions.

*Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 109, 468 A.2d 91 (1983) (quoting *Bargale Industries, Inc. v. Robert Realty Co.*, 275 Md. 638, 643, 343 A.2d 529 (1975)). In an earlier case, in which the Court of Appeals found insufficient evidence of waiver (there were only isolated instances of acceptance of late payments of insurance premiums without termination of the policy), the Court of Appeals explained:

> [W]here an insurance company adopts a course of conduct which induces an honest belief, reasonably founded in the mind of the insured that strict compliance with policy provisions will not be required and that payment may be delayed without incurring a forfeiture, and the insured is misled, the company will be deemed to have waived the right to claim an automatic forfeiture and will be estopped to elect to discontinue the insurance.

*McFarland v. Farm Bureau Mutual Auto Ins. Co.*, 201 Md. 241, 248, 93 A.2d 551 (1953).

These principles were recognized in *Mercantile-Safe Deposit and Trust Co. v. Delp & Chapel Concrete and Construction Co.*, 44 Md.App. 34, 41, 408 A.2d 1043 (1979), *cert. denied*, 287 Md. 751 (1980), although in *Tatelbaum v. National Store Fixture Sales Co.*, 196 Md. 599, 608, 78 A.2d 228 (1951), the Court of Appeals recognized that "[w]aiver of the consequences of a particular default is not necessarily a waiver of future defaults...."

In *University National Bank v. Wolfe*, 279 Md. 512, 369 A.2d 570 (1977), the Court found sufficient evidence of

waiver by conduct when a bank had accepted numerous single signature checks (40 percent of the checks drawn on the account) despite an agreement that all checks were to have two signatures. Similarly, in *John B. Robeson Associates, Inc. v. Gardens of Faith, Inc.*, 226 Md. 215, 172 A.2d 529 (1961), a waiver was found when one party, after one or two defaults, continued to accept performance and failed to exercise its rights to terminate a contract. *See also Snyder v. International Harvester Credit Corp.*, 147 Ind.App. 364, 261 N.E.2d 71 (1970) in which two occasions of acceptance of late payment under an installment sales agreement were held to be sufficient evidence of waiver of the right to repossess.

The Maryland cases we have cited show clearly that the principle of waiver by conduct is recognized in this State, consistent with the doctrine explained by Anderson; *see* p. 263, *supra*. None of those cases, however, dealt with an agreement that, like the one before us, contained an express non-waiver provision. Nor did they consider the effect of notices of intention to repossess, such as those sent in this case.

The problem of a non-waiver agreement has been addressed in other states. Illinois and Alabama adopt the position the Bank espouses here: there can be no waiver by conduct in the face of a non-waiver agreement requiring any waiver to be in writing.

In *General Grocer Co. of Illinois v. Bachar*, 51 Ill. App.3d 907, 8 Ill.Dec. 720, 365 N.E.2d 1106 (1977), there was an agreement that provided for repossession on default in required payments and that further provided:

> No failure or delay by Lender in exercising any right or remedy hereunder or otherwise shall operate as a waiver thereof. A waiver of any such right or remedy must be in writing and shall be limited to the specific instance and to the right or remedy expressly waived....

8 Ill.Dec. at 721, 365 N.E.2d at 1107.

The Illinois court opined (without citation of authority, and with the comment that the defaulting debtor had offered

none): "In the light of such 'non waiver' clause, which was agreed to by the [debtor], we cannot interpret the [creditor's] conduct in accepting tardy payments (whether such instances be many or few) to constitute a suspension of the terms of an agreement to make payments on a date certain." 8 Ill.Dec. at 723, 365 N.E.2d at 1109.

A more carefully-considered opinion is *Hale v. Ford Motor Credit Corp.*, 374 So.2d 849 (Ala.1979). There the conditional vendee made every monthly payment late over a period of about a year. When the holder of the security interest eventually repossessed the vehicle, the vendee sued for conversion. The security agreement provided that "[w]aiver ... of any default shall not be a waiver of any other default" and required any waiver to be written. 374 So.2d at 850. A closely-divided (6–3) Supreme Court of Alabama held:

> A security agreement is effective according to its terms.... The inadvertence of the debtor here cannot raise an estoppel against the contractual interest of the creditor under the express terms of the security agreement.... There having been no modification of the express agreement, the secured party, upon default, had the right to take possession of the collateral.

374 So.2d at 853 [citations omitted].

The dissenters were of the view that the conduct of a financial institution in accepting late payments over a period of time may estop it from repossessing a vehicle unless it gives prior notice of intent to do so. Here, the notices were thought to be deficient because they advised only that the car *could* be repossessed if the payments were not made. 374 So.2d at 853–854.

*Hale* has been followed in Alabama, albeit with some reluctance. *See McAllister v. Langford Investigators, Inc.*, 380 So.2d 299, 300 (Ala.Civ.App.1980), applying the *Hale* rule, but stating that but for *Hale* the intermediate appellate court would have reached the opposite result.

Other states have rejected the Illinois-Alabama approach. In *Smith v. General Finance Corp. of Georgia,* 243 Ga. 500, 255 S.E.2d 14 (1979), for example, the Supreme Court of Georgia held that "a provision in a contract against waiver of contractual rights may itself be found by a jury to have been waived." 255 S.E.2d at 15. In so holding, the court expressly disapproved *Fair v. General Finance Corp. of Georgia,* 147 Ga.App. 706, 250 S.E.2d 9 (1978). The latter case had held that in the face of a contractual non-waiver provision, there could be no waiver of the right to repossess by acceptance of late payments without repossession.

Similar in result to *Smith* is *Van Bibber v. Norris,* 404 N.E.2d 1365 (Ind.App.1980). In that case the conditional vendee of a house trailer was late in making 57 out of 59 monthly payments. Of these, 37 were more than ten days late. The vendor's assignee (a bank) would press for payment on each occasion; the vendee would eventually make payment; the bank would accept the payment. Eventually, after the vendee had been sued for rent by a trailer park, had tried to remove the trailer from the park surreptitously, and had been arrested, the bank repossessed. The trial court found a waiver; the intermediate appellate court affirmed, despite a contract provision that "[n]o waiver by the Sellers [the bank] of any default shall be effective unless in writing, nor operate as a waiver of any other default nor of the same default on a future occasion." 404 N.E.2d at 1374.

The appellate court concluded that a secured party that establishes a pattern of accepting late payments may not suddenly insist on timely payment and declare a forfeiture unless it first gives reasonable and specific notice of its intention to do so. 404 N.E.2d at 1373. As to the contractual non-waiver provision, it was not enough.

[T]he bank's conduct in accepting fifty-seven past due payments and thirty-seven delinquent payments spoke louder than its word. The trial court was adequately

justified to conclude that the bank had waived timely payments.

404 N.E.2d at 1374.

*Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232 (Minn.1980) completes our trilogy of cases permitting a finding of waiver despite a non-waiver clause. Cobb bought a Mack truck in December 1971. The installment sale contract stipulated:

> No amendment of this contract shall be binding upon the seller unless in writing and signed by its duly authorized representative.... Any waiver of any breach or default shall not constitute a waiver or [*sic*] any other or subsequent breach or default.

295 N.W.2d 232.

By November 1973, Cobb was two payments behind. He secured two extension agreements, but remained in arrears. Mack Truck sent various letters demanding payment, although it did not threaten repossession. In 1975 Mack threatened to terminate the contract unless certain payments were made. They were not made, but Mack did nothing more until March 1976, when it repossessed the vehicle. Up until then, Mack had accepted every late payment.

The Supreme Court of Minnesota carefully reviewed the authorities, noting the two divergent lines of decisions we have discussed. Citing cases from Florida, Nevada, Oregon, and Texas (in addition to the Georgia authority we have reviewed), it found an apparent majority of the states that had considered the issue in favor of permitting waiver, even in the face of a non-waiver clause.[3] The court affirmed Cobb's recovery of compensatory damages against Mack:

> We hold that the repeated acceptance of late payments by a creditor who has the contractual right to repossess the

---

**3.** We might add Rhode Island to the list. *See Fontaine v. Industrial National Bank of Rhode Island,* 111 R.I. 6, 298 A.2d 521 (1973).

property imposes a duty on the creditor to notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully repossess the collateral.

295 N.W.2d at 237.

■ We believe that the decisions permitting waiver of contractual rights despite a non-waiver clause requiring a written waiver are consistent with Maryland decisions. Indeed, we said so in *Hoffman v. Glock*, 20 Md.App. 284, 288, 315 A.2d 551 (1974), although not in the context of a retail sales installment agreement. We hold, therefore, that a waiver of a contractual right to prompt payment or a waiver of a contractual right to repossess (or for that matter a statutory right to repossess; *see* § 12–624(a) of the Commercial Law Art.) may be effected by conduct, and the same is true as to the provisions of a non-waiver clause. When such a waiver has occurred, the creditor, before it can insist on future performance in strict compliance with the contract, must give plain and reasonable notice to the debtor that it intends to do so; *see* § 2–209(5) of the Commercial Law Art.[4]

■ When we apply this holding to the facts before us, a clear result emerges: the question of waiver was one for the jury in this case. Returning to our earlier definition of waiver (page 265, *supra*), there is no doubt that the Bank was well aware of its rights to require timely monthly payments and to repossess Battista's car in the absence of such payments. There is no doubt that a number of payments were late and that the Bank did not repossess until the August and September 1980 payments were in arrears. There was evidence sufficient to support a finding that the

---

4. Commercial Law Art. § 2–209(5) (part of the Uniform Commercial Code) reads:

 A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

Bank was aware of Battista's disability, of the disability insurance arrangement with Geneva, and of the reason why Geneva's payments were not always timely. Despite that evidence, the Bank accepted ten or more irregular payments from Geneva.

Given these facts or allowable inferences from facts, a reasonable jury could also find that Battista had justifiably relied on a course of conduct by the Bank; a course of conduct inconsistent with an intention to insist rigorously on the prompt payment and forfeiture provisions of the contract. As a consequence, the jury might have found (and in fact did find) waiver of those provisions by the Bank, as well as waiver of the non-waiver clause.

As we have seen, such a waiver imposes on the creditor a duty to warn the debtor that strict compliance will be required in future. It is true that each time the Bank sent a "ten-day letter" to Battista, it warned of the need for strict compliance and said it would repossess the car. But it is also true that *every* time (except the last one) the Bank sent such a letter, it thereafter did not insist on strict compliance, nor did it repossess the car. That conduct might have constituted another waiver or the jury might have found that the Bank's retraction of waiver was not given by the reasonable notice required by § 2–209(5) or that the retraction was unjust within the meaning of that section.

██ The bottom line is that these matters, essentially involving intent, ordinarily are best left to the fact-finder, as many cases have held. *Gold Coast,* 298 Md. at 109, 468 A.2d 91; *University National Bank,* 279 Md. at 523, 369 A.2d 570; *Mercantile-Safe Deposit,* 44 Md.App. at 41–42, 408 A.2d 1043; *Hoffman,* 20 Md.App. at 288, 315 A.2d 551. Initially, that was done in this case. The judge erred when he changed his mind and granted judgment n.o.v. for the Bank after the jury, with a sufficient factual basis for doing so, had decided the waiver issues in favor of Battista.

### Compensatory Damages

As an alternative basis for granting the Bank's motion for judgment n.o.v., the trial judge found insufficient evidence of compensatory damages to warrant submission of that issue to the jury. Evidence of damages was sparse indeed. Battista says one of the reasons for that was the erroneous exclusion of certain proffered testimony of a mechanic, Nolan Tharp.

Tharp was called to prove some repair bills—bills for repairs that had been undertaken after Battista had retrieved her car in November 1980. She claimed the work was required to repair harm done to the Honda while it was in the hands of the Bank or the Bank's agents.

■ Battista testified that the car was operational when the Bank repossessed it but was not when she got it back. Tharp's proposed testimony, however, related to rather routine maintenance activity (motor tune-up, filling with anti-freeze). Moreover, it was conceded that Tharp could not testify what caused the need for the work that he had done, nor did Battista so testify. Tharp's testimony on this subject was properly excluded because it had not been shown that the work he did was reasonably necessary to repair damage that had been done because of the repossession of the car. That is, Battista had failed to prove what we have called "the liability aspect of damages" (proximate causation) to which "the highest requirement of certainty attaches," as opposed to evidence concerning the amount of damages, which may be less specific. *Bastian v. Laffin,* 54 Md.App. 703, 715, 460 A.2d 623 (1983). The judge did not err in excluding Tharp's testimony.

■ There was, however, other evidence of damages. Battista was unable to use her car for seven weeks because it was in the Bank's hands for much of that period, and Tharp was allowed to testify that a reasonable weekly rental for a replacement vehicle was $25 per day plus mileage. This was enough to take the issue of compensatory damages to the jury.

The Bank now argues that given the slim evidence of damages, the $9,000 verdict returned by the jury was excessive. Maybe so, but that question was not before the trial judge and it is not before us. The motion the Bank presented below was a motion for judgment n.o.v. pursuant to Rule 2–532. It filed no motion for a new trial pursuant to Rule 2–533, and it argued in its motion that "in the absence of evidence of damages, the award of compensatory damages is excessive as a matter of law."

 The theory that judgment n.o.v. should be granted if there is *no* evidence of damages is, of course, sound. Judgment n.o.v. may be granted whenever there is insufficient evidence to take to the jury some element of a plaintiff's case that is essential to recovery. The judge accepted this theory, but we have held he was wrong; there was enough evidence of damages to present a jury question. That being so, however, the Bank is now precluded from arguing that the verdict was excessive. A motion for judgment n.o.v. is not the way to get at excessive damages; that is the office of a motion for a new trial which can be denied conditioned on the plaintiff's acceptance of a *remittitur*. *Cheek v. J.B.G. Properties, Inc.*, 28 Md.App. 29, 43, 344 A.2d 180 (1975) (judgment n.o.v. cannot be used to amend, reduce, or alter jury's verdict). That *Cheek* is still good law is demonstrated by Rule 2–532(e) which provides that when a jury verdict has been returned, and when a motion for judgment n.o.v. is not joined with a motion for new trial, the court may deny or grant the motion for judgment. If it does the latter, it may only "set aside any judgment entered and direct the entry of a new judgment."

Here, the judge granted the motion because he saw insufficient evidence of waiver and insufficient evidence of damages to go to the jury. He entered judgment for the Bank. We disagree with him on both points, but because of the procedural posture of the case, do not have before us whether the verdict was excessive in light of the evidence of damages that is in the record. We cannot use an excessive

damages argument to sustain the trial judge's granting of the judgment n.o.v.

## Punitive Damages

Battista's final assignment of error is that the judge erred in removing from the jury the issue of punitive damages. We disagree.

 The conversion claim was one that arose out of a contractual relationship. Therefore, to recover punitive damages, Battista had to prove actual malice on the part of the Bank. *Miller Building Supply, Inc. v. Rosen,* 305 Md. 341, 348, 503 A.2d 1344, (1986). To find actual malice one must be able to find "the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Drug Fair v. Smith,* 263 Md. 341, 352, 283 A.2d 392 (1971). Actual malice may, of course, be inferred from circumstantial evidence, *Hamilton v. Ford Motor Credit Co., supra,* 66 Md.App. at 65, 502 A.2d 1057, but Battista's evidence, whether circumstantial or direct, even when fully credited and viewed in the light most favorable to Battista, was not enough.[5]

 The record shows that the Bank may have been careless in processing its final ten-day letter, and perhaps discourteous or negligent in failing to return Battista's calls in September 1980, after she had received that letter. But the only indication of actual hostility to Battista occurred after the car had been repossessed, when Prescimone had

---

5. We are aware that when a Rule 2–519 motion is made at the close of the plaintiff's evidence in a court trial, "the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff...." Rule 2–519(b). But this was a jury trial, and under that circumstance the court must "consider all evidence and inferences in the light most favorable to the party against whom the motion is made." *Id.*

an angry verbal exchange with Battista, refused to tell her where the car was, and warned "it would cost her" if she attempted to fight the Bank. The Bank was wrong in its legal conclusion that it was entitled to repossess the car, or at least it was permissible for a jury so to decide. It could, however, have reached that conclusion on a mistaken but good faith assumption that the law as to waiver was other than we have held it to be. *Cobb v. Midwest Recovery Bureau Co., supra,* 295 N.W.2d at 237–238 (rejecting punitive damages claim). The repossession itself was not evidence of actual malice, and the post-repossession exchange, even taken in light of the other evidence in the case, was far less than the evidence of actual malice that the Court of Appeals found sufficient in *Henderson v. Maryland National Bank,* 278 Md. 514, 366 A.2d 1 (1976) or that we found sufficient in *Hamilton.* The trial judge did not err when he took the punitive damages claim from the jury.

## Conclusion

We have held that the judge erred in granting the Bank's motion for judgment n.o.v. and for that reason we must reverse. We have also held that Battista's punitive damages claim was properly kept from the jury. Because of the procedural posture of this case, the Bank's argument that the jury awarded excessive compensatory damages is unavailing. Under Rule 1075 we may, "[o]n reversing a judgment ... enter such judgment as ought to have been entered by the lower court." We shall do so.

JUDGMENT REVERSED.

JUDGMENT ENTERED IN FAVOR OF JACQUELINE BATTISTA AND AGAINST SAVINGS BANK OF BALTIMORE IN THE AMOUNT OF $9,000 WITH INTEREST AT TEN PERCENTUM PER ANNUM FROM MARCH 21, 1985, AND COSTS. APPELLEE TO PAY THE COSTS ON APPEAL.