946 F.2d 886
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TRAVELER'S EXPRESS, INCORPORATED, a body corporate, Plaintiff-Appellee,
v.
BEL AIR EXXON, INCORPORATED, t/a B & J Liquors, t/a BelAir
Exxon, Incorporated, t/a J & B Check Cashers, Sandco,
Incorporated, t/a Sandco Liquors, J & S Incorporated, t/a
Orleans Shell, Jimmy Brown, Socorro Brown, Defendants-Appellants,
and
Mel's Corner, Incorporated, formerly known as J.R. Brown,
Incorporated, Billy Whaley, Sandra Whaley, Defendants.
 No. 90-1834.
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1991.
Decided Oct. 3, 1991.
As Amended Nov. 21, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Deborah K. Chasanow, Magistrate Judge. (CA-88-3748-HAR)
 Argued: Randall Curtis Smith, Olney, Md., for appellant.
 Richard Michael Kind, Kind and Dashoff, Baltimore, Md., for appellee.
 On Brief: Arnold D. Dashoff, Kind and Dashoff, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before DONALD RUSSELL, K.K. HALL and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The Appellants, Jimmy and Socorro Brown, former husband and wife, appeal from the magistrate judge's order entering judgment in favor of the Appellee, Traveler's Express, Inc. ("Traveler's"), after a two-day bench trial.* The underlying dispute concerns amounts due and owing for the Browns' sale of money orders for Traveler's through their Baltimore area businesses. After hearing oral argument and considering the parties' briefs and the record, we affirm.
 
 I.
 
 2
 The Browns' relationship with Traveler's is memorialized in various trust agreements between Traveler's and the Baltimore City check cashing businesses with which the Browns were involved, including Mel's Corner. Pursuant to those agreements, the Browns and other defendants who have chosen not to appeal, all of whom were corporate officers or spouses of corporate officers in the named businesses, agreed to sell Traveler's money orders, collect the funds, retain a specified commission, and remit the remaining proceeds to Traveler's. In connection with these trust agreements, Socorro Brown signed personal indemnity and guarantee agreements which are now in dispute. The trust agreements encouraged, but did not require that proceeds from sale of the money orders be kept in a separate account. In those cases where the proceeds of the money orders due Traveler's were commingled with business funds, however, the trust agreements provided that Traveler's retained an interest in the proceeds as "trust funds."
 
 
 3
 Traveler's terminated all money order sales by the businesses and commenced the present action to recover outstanding money order proceeds after an audit revealed over $230,000 in unpaid funds. The Browns contend that the shortages were attributable not to their personal wrongdoing, but to the fact that the businesses had been the victim of a check-cashing scam and an armed robbery. Socorro Brown also asserts that she verbally rescinded her guarantee and that in the alternative, Traveler's was put on notice of a change in guarantee when it received information that the Browns were divorcing.
 
 
 4
 Several of the issues raised by Traveler's were disposed of by partial summary judgment below. The issues remaining on appeal include (1) whether Jimmy Brown is liable for conversion of Traveler's funds used for other purposes, and (2) whether Socorro Brown can be held responsible on her personal guarantees for outstanding funds belonging to Traveler's, notwithstanding her alleged verbal rescission of those guarantees.
 
 II.
 
 5
 We first discuss the issue of conversion. Under Maryland law, conversion is defined as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Hamilton v. Ford Motor Credit Co., 502 A.2d 1057, 1066 (Md.Ct.Spec.App.), cert. denied, 507 A.2d 631 (Md.1986). Seealso Battista v. Savings Bank of Baltimore, 507 A.2d 203 (Md.Ct.Spec.App.1986). The person claiming conversion must also have the right to immediate possession. Hamilton, 502 A.2d at 1066. Although conversion is an intentional tort, a showing of improper motive is not required. Keys v. Chrysler Credit Corp., 494 A.2d 200, 208 (Md.1985).
 
 
 6
 The magistrate judge found that the parties had a clear understanding that moneys received from sale of Traveler's money orders could be commingled with other business proceeds, but that the funds belonging to Traveler's had to be accounted for on a regular basis. This finding of fact may not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a).
 
 
 7
 The record reveals that Jimmy Brown used Traveler's funds to cover his own business expenses. He testified that he considered all the money in the business checking account, including all funds received for sale of Traveler's money orders, to be corporate money rather than Traveler's funds. This testimony reflects a gross misperception of the responsibilities created by the trust agreements. The trust agreements expressly provided that funds received for the sale of money orders, absent commissions, retained their character as Traveler's funds even when deposited in a general account. Brown's conduct in treating those funds as corporate funds reflects the necessary intent and the requisite dominion and control to bring his actions within the definition of conversion. All other elements of conversion being present, the magistrate judge correctly determined that a conversion of funds occurred each time that Jimmy Brown used Traveler's funds deposited in the Mel's Corner general bank account for other purposes, and that Brown is therefore liable for conversion of $152,417.13.
 
 III.
 
 8
 The remaining issue of Socorro Brown's alleged rescission of her personal guarantees is easily resolved. The Browns assert on appeal that Traveler's was affirmatively obligated to act to obtain proper trust agreements (and presumably guarantees as well) upon oral notice of a change in business ownership. However, the trust agreements in effect between the parties provided for notice of a change in business ownership by telegram or registered mail, with continued liability for failure to provide such notification. The Traveler's representative, Ms. Tompros, denied ever having received verbal notice from the Browns about their divorce or their desire to have Socorro Brown's name removed as guarantor for those businesses in which she no longer held an interest. After hearing this conflicting testimony, the magistrate judge found that regardless of the Browns' unilateral expectations, no effort was made to formalize the termination of Socorro Brown's personal guarantee and that Traveler's never agreed to such termination or rescission. That finding is not clearly erroneous, Fed.R.Civ.P. 52(a), and is dispositive of this claim.
 
 
 9
 Accordingly, we find no error in the magistrate judge's rulings and affirm.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c)