WILLIAM L. PAUL, Plaintiff-Appellee and Cross-Appellant, v. DAVID E. NEELY, Defendant-Appellant and Cross-Appellee (Insurance Company of North America, Defendant-Appellee).

Fourth District   No. 4—86—0660

Opinion filed May 7, 1987.—Rehearing denied June 11, 1987.

Michael L. Closen, of Chicago, for appellant.

Fint, Wright & Associates, Ltd., of Bloomington, for appellee William L. Paul.

Michael D. Boge, of Costigan & Wollrab, P.C., of Bloomington, for appellee Insurance Company of North America.

JUSTICE LUND delivered the opinion of the court:

Defendant, David E. Neely (Neely), appeals from a judgment entered against him in favor of plaintiff, William L. Paul (Paul), in the amount of $5,246.95. Paul cross-appeals contending that the trial court erred in granting summary judgment against Paul and in favor of defendant, Insurance Company of North America (INA), on Paul's claim seeking foreclosure of his purported attorney's lien relating to a claim Frances Bush was pursuing for personal injuries in a lawsuit filed by Paul on Bush's behalf. Paul also cross-appeals contending that the trial court erred in denying his claim against Neely based upon allegations of fraudulent conduct.

■ We first consider Paul's cross-appeal relating to the count in his complaint which alleged fraudulent conduct. Paul's brief does not contain citations to the portions of the record which he contends support his allegation of fraudulent conduct on the part of Neely.

Supreme Court Rule 341(e)(7) provides in pertinent part:

"The appellant's brief shall contain the following parts ***:

\* \* \*

(7) Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." (103 Ill. 2d R. 341(e)(7).)

Paul's brief does not refer to portions of the record which support Paul's allegations that he relied on Neely's misrepresentations or that Neely made these misrepresentations in an effort to get Paul to withdraw from his representation of Bush and not assert any claim for attorney fees against her. Because Paul's brief does not contain citations to the portions of the record which he contends support his allegations of fraudulent conduct on the part of Neely, we hold that Paul has waived his claim that the circuit court erred in finding for Neely on count VI of Paul's second amended complaint.

We next consider Neely's contention that the trial court erred in entering a judgment in Paul's favor based upon a contractual theory. Paul entered into an attorney-client, one-third contingency-fee contract with Frances Bush, who was allegedly injured as a result of the conduct of an insured of INA. Paul subsequently filed suit on behalf of Bush, but on May 10, 1983, Bush notified Paul that she was discharging him as her attorney. On May 19, 1983, Paul served a notice of attorney's lien on INA. Neely subsequently contacted Paul, informing Paul that Neely was replacing Paul as the attorney representing Bush.

On June 13, 1983, Neely and Bush executed a contingent-fee agreement. This agreement provided that Neely's fee was to be 20% of any recovery of $15,000 or less, or 33⅓% of any recovery in excess of $15,000 obtained before suit was filed or 33⅓% of any recovery obtained after suit was filed. There followed a discussion about Paul's claims for attorney fees and expenses incurred. Bush's lawsuit, with Neely's assistance, was subsequently settled for $25,000, and Paul brought the present lawsuit claiming that Neely had agreed to the payment to Paul of $5,000 attorney fees plus costs expended by Paul, or if the Bush recovery was less than $15,000, one-third of the amount of the settlement. Within the same complaint, Paul sought foreclosure of the purported attorney's lien, naming INA as a defendant.

Neely appeals a $5,246.95 judgment which the trial court entered in Paul's favor, suggesting that there was not sufficient evidence to find a contract existed between Paul and Neely because of the absence of mutual assent and because of the absence of bargained-for consideration. The evidence indicates that Paul had obtained a settlement offer in the amount of $15,000 which was rejected by Bush prior to the time that Paul was notified of his discharge by Bush. Subsequently, the offer by INA was raised to $20,000, and this offer was communicated by INA to Paul. Paul notified Bush of the $20,000 offer. During the latter part of May 1983, Neely contacted Paul asking him to have no further contact with Bush. At this time, Paul informed Neely he expected to be paid for his services in representing Bush, and, according to Paul, Neely said he would discuss the matter with Bush and get back to Paul. On June 6, 1983, Neely filed a motion in circuit court to compel Paul's withdrawal as Bush's attorney.

Paul further testified that he met with Neely on June 8, 1983, and that Neely refused an offer by Paul to settle the fee dispute for $5,000, stating that he, Neely, would discuss the matter further with Bush. On June 9, according to Paul, Neely telephoned and agreed to

a $5,000 payment for Paul's services in representing Bush, providing that her claim was settled for more than $15,000. Paul stated he told Neely he would write a letter and prepare a stipulation. Paul testified that he sent a letter dated June 10, 1983, as well as a stipulation and order for substitution of counsel to Neely, and that letter included the provision that Paul would receive $5,000 attorney fees plus costs "should Mrs. Bush receive a settlement or verdict in excess of $15,000 or one-third of any amount if settlement verdict [sic] is less than $15,000." The letter also referred to the stipulation and order for substitution of counsel. A copy of this letter was introduced into evidence, but Neely testified that he did not receive the letter. He admitted he filed the stipulation, and the stipulation provided, in part, "all matters of attorney fees between the parties are agreed to among the plaintiff and said attorneys." Evidently, there was never a hearing before the court on the stipulation for substitution of attorneys.

Paul's previous secretary, who now works for another law firm, testified that she remembers sending the letter, together with the stipulation, in the same envelope, to Neely on June 10. She distinctly remembered the problems arising because of Bush's changing counsel.

Bush's lawsuit was subsequently settled with INA paying a total of $25,000. A document, entitled "Bush Settlement Agreement," signed by Bush, Bush's husband, and Neely, was introduced into evidence which provides as follows:

| | |
|---|---|
| "Contingency Fee (W. Paul) . . . . | 5,000.00 |
| (33⅓% of $15,000) | (escrow) |
| Contingency Fee (D. Neely) . . . | 6,333.33 |
| (20% of $15,000.00 = $3,000.00) | |
| (33⅓% of $10,000.00 = 3,333.33) | |
| Expenses (W. Paul) . . . . . . . . . . | 246.95 |
| | (escrow)" |

Bush testified as one of Paul's witnesses and admitted that she had been informed of the $15,000 settlement offer. She stated she never saw the June 10, 1983, letter. However, she did testify that prior to her signing the stipulation for withdrawal of Paul as her counsel, Neely told her that he and Paul had worked out an agreement. She denied, though, that Neely told her the terms of the agreement. It was her understanding that the total attorney fees for which she would be responsible would be one-third of her total recovery. After the $25,000 settlement, Neely offered Paul $2,500 but refused to pay the $5,000 plus expenses.

■ Neely contends that Paul was only entitled to receive payment for his actual time expended based upon an itemization of his fees and denies that the $5,000 settlement agreement existed. The trial court held that this was implausible in view of the fact that contrary to Neely's argument, it was not customary for attorneys to keep time or activity records when representing clients on a contingent-fee basis. Interestingly enough, Neely testified that he did not remember how many hours he spent on the case involving Bush's claims but stated, "I believe I had more hours in the case than Mr. Paul." The court found that the most persuasive evidence of the existence of the purported settlement agreement was the document entitled "Bush Settlement Agreement." While Neely argues that Paul's testimony and the testimony of his previous secretary should be considered without merit, the evaluation of the credibility of these witnesses was for the fact finder. Neely suggests that under the alleged settlement agreement, he would lose money if the settlement was less than $15,000, and the existence of such a "preposterous arrangement" is convincing evidence of the nonexistence of the agreement. Considering the existence of a settlement offer by INA of $20,000 at the time of the agreement, we discount the Neely argument. The trial court's finding that a contract existed will not be disturbed unless it was against the manifest weight of the evidence. (*General Grocer Co. v. Bachar* (1977), 51 Ill. App. 3d 907, 911, 365 N.E.2d 1106, 1108.) We find that the trial court's judgment on the existence of an agreement between Paul and Neely should not be disturbed on review.

■ We find also that Neely's argument that there was no consideration for the Paul-Neely settlement agreement is without merit. Paul's consideration was not his foregoing payment under his contingent-fee contract with Bush, but rather his agreeing to forego any claim to an award of fees in excess of $5,000 on a *quantum meruit* basis or any other basis. There was no question but that Paul would have had a claim for some amount of money for the services he had furnished. Putting a cap on that amount of money allowed Neely the benefit of assuring his own fee if a settlement or verdict of over $15,000 could be obtained. As it turned out, Neely arranged the settlement of $25,000 after Paul had obtained a $20,000 offer. We find Neely's argument that he could possibly lose money if the settlement was less than $15,000 unavailing.

■ We next turn to the question of the court's granting summary judgment in INA's favor against Paul on the foreclosure count. Bush sent Paul a letter of discharge on May 10, 1983, and Paul

mailed his notice of an attorney's lien to INA on May 19, 1983. Neely was substituted as Bush's counsel on June 21, 1983. INA successfully contended in the trial court that Paul had not perfected his attorney's lien because he served notice after his discharge by Bush. Paul contends that he was not barred from filing the notice and creating the lien prior to being allowed to withdraw as Bush's counsel.

Paul is correct in his assertion that an attorney may not withdraw his appearance in a case prior to obtaining leave of the court. (*Jacobson v. Ashkinaze* (1929), 337 Ill. 141, 168 N.E. 647.) In *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 227, 399 N.E.2d 969, 973, the court held that an attorney's lien notice which was filed after the attorney was discharged by the client did not create a lien. However, in the *Rhoades* case, the complaint had not been filed, and the attorney, therefore, was not attorney of record in a pending cause of action. The Second District Appellate Court, in citing *Rhoades*, specifically held that the filing of a notice of lien after being discharged was ineffectual even when the filing attorney had participated in a condemnation action through the trial level and the appellate proceedings. (*Department of Public Works v. Exchange National Bank* (1981), 93 Ill. App. 3d 390, 417 N.E.2d 1045.) The *Department of Public Works* case also stands for the proposition that a contingent-fee contract is voided by termination of an attorney prior to final judgment or settlement and that *quantum meruit* at that time becomes the basis for the attorney's recovery. We see no problem with following the extension of the *Rhoades* case as set forth in the *Department of Public Works* case because an attorney, with a contingent-fee contract, can file his notice of lien at any time after the creation of the contractual relationship between attorney and client and before his discharge by his client. In the case now before us, we also are aware of the possibility that Paul was estopped from bringing the lien foreclosure action because of his participating in the filing of the document stating his withdrawal as counsel and suggesting that the question of attorney fees had been settled between the parties.

For the reasons set forth herein, we affirm the decision of the trial court.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.