2020 IL App (1st) 191425-U
Order filed: March 13, 2020

FIRST DISTRICT
Fifth Division

Nos. 1-19-1425, 1-19-1463, and 1-19-1524 (consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THOMAS MILLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| TAMERLANE HOMEOWNERS' ASSOCIATION, ACANTHUS DEV. MANAGEMENT, LLC (f/k/a Capstone Property Management LLC), STARS FENCE COMPANY, MICHAEL BRADY, JILL HAAGENSON, ANDREW PASSAMANAI, JULIA PASSAMANAI, RENDHIR CHANDRAN, GEETIKA CHANDRAN, ERIK LARSEN, and CHRISTOPHER P. CARLTON, | ) ) ) ) ) ) ) ) | |
| | ) | Nos.    11 M1 402451 and |
| Defendants-Appellees | ) | 13 CH 6046 |
| | ) | (consolidated) |
| (Chuhak & Tecson, P.C., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Tamerlane Homeowners' Association, and Acanthus Dev. Management, LLC (f/k/a Capstone Property Management LLC), Jill Haagenson, Andrew Passamanai, Julia Passamanai, Rendhir Chandran, Geetika Chandran, Erik Larsen, and Christopher P. Carlton, | ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Sanjay Tailor, |
| Defendants-Appellants). | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

Nos. 1-19-1425, 1-19-1463, and 1-19-1524 (consolidated)

**ORDER**

¶ 1    *Held*:    Petition to enforce attorney's lien was properly denied, where notice of lien was not timely served; this conclusion renders moot the issue of the denial of a motion to enforce a settlement agreement.

¶ 2    In these three consolidated appeals, we are asked to address the propriety of the circuit court's denial of both a petition to enforce an attorney's lien and a motion to enforce a settlement agreement. For the following reasons, we conclude that the petition to enforce the lien was properly denied, a conclusion that renders the appeals from the denial of the motion to enforce a settlement agreement moot.[1]

¶ 3                                    I. BACKGROUND

¶ 4    In 2011, the City of Chicago filed a lawsuit seeking injunctive relief and the imposition of civil penalties (Case No. 2011 M1 402451). The City's suit alleged that the owners of a number of properties located on North Greenview Avenue in Chicago had installed impervious areas to and lifted the grade of their properties in violation of the municipal code, which had caused additional runoff, the deposit of additional topsoil, and the deterioration of a fence on a property located on North Southport Avenue.

¶ 5    In 2013, the plaintiff-appellee, Thomas Miller, filed a lawsuit against the defendants-appellees, Tamerlane Homeowners' Association, Acanthus Dev. Management, LLC (f/k/a Capstone Property Management LLC), Stars Fence Company, Michael Brady, Jill Haagenson, Andrew Passamanai, Julia Passamanai, Rendhir Chandran, Geetika Chandran, Erik Larsen, and Christopher P. Carlton (Case No. 2013 CH 6046). Mr. Miller, the owner of the Southport Avenue

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

property, sought to recover for stormwater damage allegedly caused by changes to the Greenview Avenue properties, as well as damages for the alleged encroachment of a fence separating his property from the Greenview Avenue properties. The named defendants in Mr. Miller's suit included the owners of the Greenview Avenue properties, the homeowners' association and property management company for those properties, and the company responsible for the allegedly encroaching fence. By agreement of the parties, the City's lawsuit and Mr. Miller's lawsuit were consolidated in the circuit court.

¶ 6    The parties engaged in extensive settlement negotiations with respect to the consolidated cases. Throughout this process, Mr. Miller was represented by the law firm of Chuhak & Tecson, P.C. (Chuhak). However, on June 12, 2018, Chuhak filed a motion to withdraw as Mr. Miller's attorney in this matter, citing irreconcilable differences. That motion was set for hearing on July 5, 2018. On July 3, 2018, Chuhak sent notice of its attorney's lien to the defendants in Mr. Miller's action, as well as the defendants' attorneys, via certified mail, return receipt requested. On July 5, 2018, the circuit court granted Chuhak's motion to withdraw as Mr. Miller's counsel.

¶ 7    Later in July 2018, Mr. Miller settled his claim against defendant Stars Fence, and in August 2018 the circuit court dismissed Stars Fence from the case pursuant to that settlement. In January 2019, the remaining parties entered into a final settlement agreement with respect to both underlying lawsuits. In total, Mr. Miller received $102,000 from the defendants or their insurers to settle the two lawsuits, and the final settlement agreement called for all parties to bear their own attorney fees and costs. A stipulated dismissal of both lawsuits, pursuant to the final settlement agreement, was entered by the circuit court on January 18, 2019. This order also indicated each party would pay its own fees and costs. The circuit court retained jurisdiction to enforce the terms of the settlement agreement.

¶ 8 Upon learning of the settlement, Chuhak filed a petition to enforce its attorney's lien in February 2019. Therein, Chuhak alleged that Mr. Miller had failed to pay his attorney fees and costs pursuant to a fee agreement—particularly during 2017 and 2018—leading to Mr. Miller owing Chuhak over $115,000 in fees and $30,000 in costs. Contending that it had perfected its attorney's lien, Chuhak asked the circuit court to enter judgment against the underlying defendants in Mr. Miller's lawsuit for its unpaid fees and costs.

¶ 9 The defendants responded to Chuhak's petition by raising several challenges, both to the timeliness and the substantive merits of Chuhak's notice of its lien. In addition, Tamerlane Homeowners' Association and Acanthus Dev. Management, LLC filed a motion seeking to enforce Mr. Miller's obligation to bear his own fees and costs, pursuant to the terms of the settlement agreement. Most of the remaining defendants subsequently filed a motion to join the arguments raised by Tamerlane and Acanthus.

¶ 10 On May 15, 2019, the circuit court denied the motion to enforce the settlement agreement without further explanation, but specifically indicated that its ruling was without prejudice as to any "claims for equitable subrogation against Mr. Miller if this Court grants the Chuhak petition." On June 18, 2019, the circuit court entered a written order denying Chuhak's petition. Therein, the circuit court concluded that Chuhak had not perfected its lien by properly serving the defendants notice prior to the order granting Chuhak's motion to withdraw as Mr. Miller's counsel. The circuit court did not address the substantive challenges raised by the defendants with respect to the notice of lien.

¶ 11 Chuhak filed a timely notice of appeal from the denial of its petition to enforce its attorney's lien (No. 1-19-1425). Thereafter, Tamerlane and Acanthus filed a separate appeal from the denial of the motion to enforce the settlement agreement (No. 1-19-1463), which was followed by a

Nos. 1-19-1425, 1-19-1463, and 1-19-1524 (consolidated)

similar, separate appeal filed by all of the other underlying defendants other than Stars Fence and

Michael Brady (No. 1-19-1524).[2] In an order entered by this court on August 8, 2019, these three

appeals were consolidated.

¶ 12                                    II. ANALYSIS

¶ 13     We begin by addressing the denial of Chuhak's petition to enforce its attorney's lien. This

issue requires us to interpret the language of both statutory text and a supreme court rule, with the

same principles applicable to both exercises. *People v. Marker*, 233 Ill. 2d 158, 164-65 (2009).

"With rules, as with statutes, our goal is to ascertain and give effect to the drafters' intention.

[Citation.] The most reliable indicator of intent is the language used, which must be given its plain

and ordinary meaning." *Id*. at 165. "Additionally, the interpretation of a supreme court rule, like a

statute, is reviewed by this court *de novo.*" *Id*. at 162.

¶ 14     To perfect an attorney's lien, the attorney must comply with several statutory requirements

set forth in the Attorneys Lien Act, which in relevant part provides:

> "Attorneys at law shall have a lien upon all claims, demands and causes of action,
>
> including all claims for unliquidated damages, which may be placed in their hands by their
>
> clients for suit or collection, or upon which suit or action has been instituted, for the amount
>
> of any fee which may have been agreed upon by and between such attorneys and their
>
> clients, or, in the absence of such agreement, for a reasonable fee, for the services of such
>
> suits, claims, demands or causes of action, plus costs and expenses. ***.
>
> To enforce such lien, such attorneys shall serve notice in writing, which service
>
> may be made by registered or certified mail, upon the party against whom their clients may

_____

[2] Michael Brady filed a fourth appeal (No. 1-19-1482), which was subsequently dismissed by this court for want of prosecution.

have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice." 770 ILCS 5/1 (West 2018).

¶ 15    "The Act sets forth the requirements for effective liens. The attorney must have been hired by a client to assert a claim. The attorney must then perfect the lien by serving notice, in writing, upon the party against whom the client has the claim. The lien attaches from and after the time of the service of the statutory notice." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001). Strict compliance with these requirements is required; as "[a]ttorneys who do not strictly comply with the Act have no lien rights." *Id.*

¶ 16    Because the lien attaches to the cause of action the attorney is hired to pursue, the lien must be perfected—*i.e.*, the notice must be properly served—during the pendency of the attorney-client relationship. *Rhoades v. Norfolk & W. Ry. Co*., 78 Ill. 2d 217, 227 (1979); *Paul v. Neely*, 155 Ill. App. 3d 241, 246 (1987). If service is effectuated after that relationship has ended, the statutory lien is not perfected. *Id.*

¶ 17    "At a hearing on a petition to enforce the lien, the attorney bears the burden of making a *prima facie* showing that he has complied with the Act, both in establishing and enforcing the lien. [Citations.] Absent such a showing, the attorney forfeits his lien rights or risks dismissal of his petition to enforce for failing to strictly adhere to the procedural requirements prescribed by the Act." *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 392 Ill. App. 3d 1059, 1064 (2009).

¶ 18    Here, it is undisputed that on June 12, 2018, Chuhak filed a motion to withdraw as Mr. Miller's attorney in this matter. That motion was set for hearing on July 5, 2018, and was granted

on that date. It is also undisputed that on July 3, 2018, Chuhak sent notice of its attorney's lien to the defendants in Mr. Miller's action via certified mail, return receipt requested. While the parties spend a great deal of time disputing whether service was effectuated at the time the notice of lien was mailed, and the significance of when, or if at all, the defendants actually received the notices mailed by Chuhak, we find that this issue is clearly controlled by Illinois Supreme Court Rule 12(c) (eff. July 1, 2017).

¶ 19    Rule 12(c) (eff. July 1, 2017) clearly states: "Service by U.S. mail is complete four days after mailing." The Committee Comments to Rule 12 clearly state that: "Paragraph (c) was added in 1971 to establish, when service is made by mail, a definite starting point for measuring time periods that begin to run from the date of service." 134 Ill. 2d R. 12, Committee Comments, at 8–9. Clearly this rule applies here, where the statute explicitly states that an attorney's lien only attaches "from and after the time of service of the notice." 770 ILCS 5/1 (West 2018).

¶ 20    Pursuant to Rule 12(c), it is evident that the notice of lien *mailed* on July 3, 2018, was not actually *served* until after Chuhak's motion to withdraw was granted only two days later on July 5, 2018. As noted above, Chuhak was required to complete service of its notice of lien during the pendency of its representation of Mr. Miller in this matter and a statutory lien only attached from and after proper service of that lien. Thus, the circuit court properly concluded that Chuhak did not perfect its lien and properly denied Chuhak's petition.

¶ 21    In so ruling, we reject outright Chuhak's contention that the date of mailing establishes the date of service, as this argument clearly runs against the plain text of Rule 12(c) and the committee comments thereto. Our ruling also makes any discussion of when, if or why the defendants did or did not actually receive the notice of lien irrelevant. Also irrelevant is any discussion of the

defendant's actual notice of the lien, as strict compliance with the statutory requirements is required to perfect a lien. *Philip Morris, Inc.*, 198 Ill. 2d at 95.

¶ 22    The only remaining issue before us are the two appeals filed with respect to the circuit court's denial of the motion to enforce the settlement agreement. However, courts of review generally "do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Jonathan P.*, 399 Ill. App. 3d 396, 400 (2010).

¶ 23    The motion to enforce the settlement agreement was filed in direct response to the Chuhak's petition, which we have already concluded was properly denied. Thus, Chuhak has no current claim against the defendants. Nor has Mr. Miller himself ever made a claim against the defendants for fees and costs owed to Chuhak, such that he could arguably be in violation of the terms of the settlement agreement. Indeed, the motion to enforce the settlement agreement itself acknowledged that the defendants had "no knowledge as to whether the plaintiff in fact owes the sums claimed by Chuhak in its petition." Under these circumstances, we conclude that any further discussion of the circuit court's denial of the motion to enforce the settlement agreement would improperly require us to wade into an issue that has been rendered moot, or to render an advisory opinion. We decline to do so.

¶ 24                                   III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the denial of Chuhak's petition, and dismiss the two appeals from the denial of the motion to enforce the settlement agreement.

¶ 26    No. 1-19-1425, Affirmed.

¶ 27    Nos. 1-19-1463 and 1-19-1524, Appeals dismissed.